ANDREW MANN, Exr.

*v.*

JOHN C. MARTIN, Exr.

*Opinion filed February 14, 1898.*

1. WILLS—*will construed as creating a life estate.* A gift to the testator's wife of all his property, "to have the free and unrestricted use, possession and benefit of the same so long as she may live," subject to certain charges, the property "left by her" at her death to be sold and the proceeds divided among the testator's brothers and sisters, creates a life estate in the wife, and the property so remaining does not pass under her will.

2. ACCOUNTING—*accounting should be had where the life tenant commingles funds with her own.* Where a wife entitled, under her husband's will, to the unrestricted use for life of his personal property, consisting largely of money, commingles such funds with other funds subsequently received by her as her own absolute property, upon her death an accounting should be had, and the amount of the funds remaining in which she had but a life interest, ascertained, as nearly as possible.

*Mann* v. *Martin*, 69 Ill. App. 501, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Douglas county; the Hon. EDWARD P. VAIL, Judge, presiding.

THOMAS W. ROBERTS, and ECKHART & MOORE, for plaintiff in error.

JOSEPH H. WINKLER, for defendant in error.

Per CURIAM: The opinion of the Appellate Court for the Third District, as originally filed by Mr. Justice WALL, is as follows:

"The defendant in error filed his bill in chancery against plaintiff in error, and therein alleged that on the 28th of September, 1882, Bernard Truax made his last will and testament, whereby he disposed of his estate as follows:

" '*First*—I give and bequeath to my wife, Lydia Truax, all of my property, both real and personal, now owned by me and in my name, together with all moneys on hand or in bank, to have the free and unrestricted use, possession and benefit of the same so long as she may live, obligating her to do and perform the matters and things hereinafter set forth, to-wit: To pay the girl now living with us, to-wit, Judy Braden, when she has become of age, $500; and further, that she pay all of my just debts and funeral expenses, etc. And it is my further wish and will, that at the death of my wife that my executor sell at public vendue all of said property left by her, both real and personal, on a credit of twelve months, securing the same fully by personal security and mortgage, and when said proceeds are collected, to divide the same equally between my brothers and sisters, to-wit:' (here naming them.)

"That said Bernard Truax died October 27, 1882, and said will was duly probated, the said John C. Martin, complainant, being appointed executor, and that he turned over all the property, real and personal, of the testator to the said Lydia Truax, for her use during life; that said Lydia paid the funeral expenses and the debts, and also the legacy of $500 to said Judy Braden when she came

of age; that said testator owned, at the time of his death, 165 acres of land, had to his credit in bank $2278.74, and owned live stock and other personal property of the value of $1000; that said Lydia took possession of all of said property, real and personal, and enjoyed the same according to the said will until September 9, 1894, when she died, leaving a will, wherein she provided as follows:

"'*First*—I give and bequeath to Lydia Sweezy $500, and my wearing apparel and family bible, she being the daughter of Andrew Mann.

"'*Second*—I give to Lydia Sipes the sum of $700, she being the daughter of Valentine Mann and Susanah Mann; and Lydia Underwood the sum of $700, she being the daughter of Bernard Mann and Maria Mann; and $700 to Lydia Alexander, she being the daughter of Ignatius Small and Esther Small; the remainder to be divided equally between Lydia Sipes, Lydia Underwood and Lydia Alexander,—this being money received by me, Lydia Truax, the wife of Bernard Truax, deceased, from my father, Andrew Mann, deceased, and from my brother, Michael Mann, deceased. And it is my further wish and will, that at my death that my executor proceed to collect and pay over the moneys to the aforesaid Lydia Sweezy, Lydia Sipes, Lydia E. Underwood and Lydia Alexander the aforesaid amount of money received, being about $3000, and interest accrued thereon since received.'

"That Andrew Mann was appointed executor under said will, and filed his inventory showing the personal estate of said Lydia Truax, as follows: $747.18 in chattels, $412 in cash, $5573.13 in promissory notes,—total, $6737 31; and alleging that of this sum $3737.31, being the excess over the sum really owned and disposed of by her in her will, should be accounted for to the complainant as the executor of said Bernard Truax, but that the said Martin, executor of said Lydia Truax, refused to so account. Complainant therefore asked for a construction of the will of said Bernard Truax, and that said Martin,

as such executor, might be required to account and pay over, etc. The answer denied that the complainant was entitled to the relief sought, though admitting many of the facts alleged in the bill. Upon a hearing the court entered a decree, according to the prayer of the bill, for $3133.74, as a sixth-class claim, to be paid in due course of administration. The defendant executor has brought the record here by writ of error, and seeks a reversal of the decree.

"It appears that Bernard Truax left 165 acres of land, which said Lydia occupied, by herself or by tenants, up to her death; that the rental value of the same was three dollars per acre per annum, and that she received in cash, and in the proceeds of chattels from his estate, $3378.74; that she paid out $785.10 upon said legacy to said Judy Braden and upon debts and funeral expenses of said Bernard, including the sum of $60 for a monument. It appears also that in the year 1857, which was a few years after her marriage to said Bernard, she received from her father's estate the sum of $800, which she placed in the hands of her said husband, who used it in the improvement of the farm, which was their home up to the time of his death, and hers thereafter till her death; that a short time before his death she received from her brother's estate $270, of which $245 was deposited in bank to the husband's credit, and that after his death, viz., in the years 1886 and 1888, she received from her father's estate $2696.43. For about two years after her husband's death she conducted the farm herself. After that time she rented it, and boarded with the tenant in part payment of the rent. The income of the farm during that time was about $300 per annum, in addition to her board and the use of the room reserved by her. Her outlay for clothing, etc., was about $100 per annum.

"The first question is to determine what interest she took under the will of her husband. It seems quite clear that it was intended she should use and enjoy all his

property, real and personal, during her lifetime, in such way as she might see fit, and that all of said 'property left by her' at her death should go to his brothers and sisters. An extended argument has been presented on behalf of plaintiff in error to induce a different conclusion; but in this case, as in most others involving a construction of testamentary provisions, not much light is shed by other adjudged cases, because the language employed in them is more or less unlike that under consideration.

"In using and enjoying the personal property Mrs. Truax necessarily commingled it with what she subsequently received from other sources, and its identity is thereby lost, but upon an accounting in respect thereto the amount thereof must be ascertained, as nearly as possible. As already stated, the personal property she so received from the estate of her husband amounted to $3378.74, and this sum, less the $245 received by her husband a short time before his death, is the sum found due by the decree. It is highly probable,—indeed, quite certain,—that the income from the farm was more than enough for her support, and it is not at all unreasonable to estimate that the income from the personal property, with the surplus from the rent of the farm, was more than sufficient to make up the sum she expended in paying the legacy and the debts,—$785.10. This is quite a liberal view to take of the matter, and leaves as properly belonging to her separate estate, $3604.57.

"Turning to her will it is evident that she had no purpose to dispose of anything except what she had derived from her father and brother, 'being about $3000, and interest accrued thereon since received,' as explicitly stated in the last quoted clause of said will. This estimate agrees very well with the facts. She received from her brother, just before her husband's death, $245. She received from her father's estate, in 1886 or 1887, $790.19, and in July, 1888, from the same source, $1901.24,—in all, $2936.43. It is not likely that she received more in the

way of interest on these amounts than would make up the difference between the total and the amount left to her estate by this decree,—some $668,—unless she had it all constantly at use, which is not very probable.

"Looking at the circumstances of the parties it is easy to see why they so disposed of their property. They were married in 1857. He then had the land referred to, and not long after she received $800, which was used to improve it. They lived together on the land until 1882, when he made his will just before he died. They then had no children, but each had relatives. It was but natural and proper that after she was done with the real and personal property belonging to him it should revert to his relatives, leaving her free to give to hers, if she chose, her expectant inheritance from her father. They evidently understood the matter alike, and she had no disposition to lessen what she received from him by useless expenditures. When she came to make her last will she assumed only to dispose of the proceeds of her inheritance from her brother and father, leaving what remained of her husband's estate out of consideration.

"We are of the opinion the decree herein substantially carries out the intentions of these parties as disclosed by their wills, and that it is therefore responsive to the merits of the cause. It will be affirmed."

A careful consideration of this record satisfies us that the decree of the circuit court of Douglas county was in accordance with the intention of both testators, and that the judgment of the Appellate Court in affirming that decree was correct. We adopt the opinion of that court, and its judgment is affirmed.          *Judgment affirmed.*