ISAAC G. LOMBARD et al.

v.

FRANK M. WITBECK et al.

*Opinion filed June 18, 1898.*

1. REAL PROPERTY—*characteristic of a base or determinable fee.* A characteristic of a base or determinable fee is, that upon the happening of a named event or the performance of a named condition the title conveyed is confirmed as a title in fee simple.

2. WILLS—*distinction between devise creating determinable fee and one creating life estate.* The ground of distinction between a devise creating a determinable fee and one creating a life estate is, not that in the former the devise is accompanied by words of inheritance such as would vest the fee at common law whereas in the latter such words are not used, but that in the former the fee is given subject only to the condition that the devisee die leaving heirs, children, issue, etc., without indicating any intention to create merely a life estate. (*Smith* v. *Kimbell,* 153 Ill. 368, explained.)

3. SAME—*when devise creates a determinable fee.* A devise of real estate to the testator's grandchildren in trust, each to take an equal share of the income for life, with remainder to living issue or descendants of issue, or to the surviving grandchildren in case of the death of either without issue, and in case of the death of all without issue or descendants of issue then their entire shares to go to a third party, creates a base fee, determinable upon the death of all such grandchildren without issue or descendants thereof.

4. SAME—*bequest of personal property construed.* Where personal property is bequeathed to the testator's grandchildren in trust, each to have an equal share of the income for life, each one's share to go to the survivors in case of the death of either without issue or descendants of issue, or, in case of the death of all without issue or descendants thereof, the entire estate to go to a third party, upon the death of one without issue or descendants thereof his share of such personalty passes in absolute ownership to the survivors, freed from the trust.

5. SAME—*when accrued interests pass with original shares.* Where a will provides that the trust share of a beneficiary dying without issue shall go to certain named survivors, and in case of the death of all so named without issue their several interests to go to a third party, income accruing to each beneficiary derived from his share and not paid over will pass with the original shares, subject to the same conditions imposed upon the enjoyment of the latter.

6. SOLICITORS' FEES—*solicitor's fee need not be specifically claimed in bill to construe will.* In a case involving the construction of a will

solicitors' fees are treated as costs, and may be allowed in a proper case though not specifically claimed in the bill.

7. SAME—*when court will not disturb allowance of solicitor's fee.* The amount allowed as a solicitor's fee by the trial court, under the evidence, will not be interfered with on appeal, unless there has been manifest abuse of the trial court's discretion.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Appellants, as the legally constituted trustees under the will of Henry Witbeck, deceased, began this action in the circuit court of Cook county by bill in chancery, praying for a construction of the first, seventeenth, eighteenth, nineteenth and twentieth clauses of the last will and testament of said Henry Witbeck. These clauses are in the following language:

"*First*—I give, devise and bequeath all of my estate, of every name and nature, real, personal and mixed, of which I shall die possessed, wherever the same may be situate, to my trustees hereinafter named, and to their successors in trust, vesting them with the fee thereof, to have and to hold the same for the purposes and uses hereinafter provided, excepting so much of my said estate as I may otherwise specifically devise herein."

"*Seventeenth*—All the rest and residue of my said estate not specifically hereinbefore devised, including my homestead after my said wife, Huldah, shall cease to have any interest therein, I direct that my said trustees and their successors in trust shall hold, manage and control as in their judgment they shall deem best, for the use and benefit of my three grandchildren, Frank M. Witbeck, Gertrude H. Witbeck and Henry J. Witbeck, children of my deceased son George Witbeck, my said trustees and their successors in trust to hold said last named residue estate for the use and benefit of the last named three grandchildren during their lifetime, the net income therefrom to be divided into three equal parts, one part to be paid to each of said last named grand-

children from time to time, as my said trustees and their successors in trust shall in their judgment deem for the best interest of said grandchildren, subject to the restrictions and reservations hereinafter mentioned.

"*Eighteenth*—I further direct that my said trustees and their successors in trust shall care for and preserve the trust estate created herein, and shall manage the same as a prudent business man should manage it, and for that purpose I hereby empower and authorize my said trustees and their successors in trust to pay all taxes, make all necessary repairs on, or build on and improve any realty belonging to said residue estate held for my said last named three grandchildren, to insure, lease and sell the same, giving my said trustees full power to lease, sell, convey, mortgage or encumber any or all of my said last named residue estate in such manner, in such sum or sums and for such purposes as in their discretion they may deem best, and I empower and authorize them to reinvest in real estate or personal securities the proceeds of any accumulations, either from real estate or personal property, as they may deem for the best interests of the beneficiaries of my said residue estate, hereby empowering my said trustees and their successors in trust to make, execute and deliver any and all deeds, conveyances or other instruments in writing by them deemed necessary to carry out the spirit and intent of the provision herein; and the purchaser or purchasers of any of my said real estate shall not be obliged to see to the application of the purchase money paid to my said trustees.

"*Nineteenth*—I further provide and direct that in case of the death of either of my said three grandchildren, Frank M. Witbeck, Gertrude H. Witbeck and Henry J. Witbeck, leaving issue or descendants of issue them surviving and born in lawful wedlock, the one-third (⅓) share of all of my estate left for said last named three grandchildren shall descend to such issue or descendants of issue of each child so deceased, such issue and descend-

ants of issue to take *per stirpes* and not *per capita;* and in case any one or more of said last named three grandchildren shall die without leaving any such issue or descendants of issue, then said one-third ($\frac{1}{3}$) share of my said residue estate shall go to the survivor or survivors of said last named three grandchildren; and I further provide and direct that in case of the death of all three of said last named grandchildren without either of them leaving such issue or descendants of issue them surviving, then all of said estate hereby provided for such last named three grandchildren shall descend to my son John H. Witbeck and his heirs-at-law.

"*Twentieth*—I further direct and provide, and hereby authorize and empower, my said trustees and their successors in trust to manage said estate for the best interests of the beneficiaries herein named, and for that purpose I invest my said trustees and their successors in trust with full discretionary power on their part, to be exercised on their sole discretion and judgment; and I authorize and empower my said trustees from time to time to make any advancement or advancements they may deem best, from the personal estate hereby left to my three grandchildren, Frank M. Witbeck, Gertrude H. Witbeck and Henry J. Witbeck, or any one of them; and if they should deem it wise and prudent so to do, I hereby authorize them, in their sole discretion, to advance from said personal estate left for said last named three grandchildren any sum or sums they may deem best, not to exceed one-third ($\frac{1}{3}$) of said personal estate to any one of said last named grandchildren, to enable them to enter into and carry on any business that would be deemed by my said trustees and their successors in trust wise and proper; and in no case shall said trustees advance to any one of said last named three grandchildren to exceed the one-third ($\frac{1}{3}$) share of the personal estate which shall be left by me for their use and benefit; and in no case shall any part of the real estate left by me for their use and

benefit, or the proceeds thereof if sold, be advanced or conveyed to said grandchildren, or any one of them, during their lifetime; and any advancements made to any of said last named grandchildren shall be charged to his or her interest, and upon the death of any such grandchild said advancement shall be deducted from the one-third ($\frac{1}{3}$) share of the personal estate which would go to the issue or descendants of issue of such deceased grandchild; and for the purpose of protecting said grandchildren and said estate from waste, or from the debts and obligations which any one of said last named grandchildren may incur, I hereby authorize and empower my said trustees to withhold any or all of the income or principal of said estate held for them, or either of them, and retain the same in their sole possession and control for such time as they may deem for the best interest of said estate and such grandchild or grandchildren; and in case of the insolvency of any one or more of said last named grandchildren, or in case of any attempt to establish a lien upon the income of such grandchild by any creditor or assignee, either voluntary or by operation of law, my said trustees and their successors in trust are hereby empowered, authorized and directed to retain all of said income which would otherwise go to such insolvent, and to invest the same and make it a part of the principal sum from which said income is derived, to be held with said principal sum and to be disposed of as a part of and in the same manner as the principal sum from which said income is derived; and in case any one or more of said last named grandchildren shall become intemperate or otherwise incompetent to manage his or her estate, or shall be a spendthrift, or for any reason whereby my said trustees and their successors in trust shall deem it unsafe and insecure to turn over to the said grandchildren, or any one of them, the income from said residue estate set apart for them, or any of the principal thereof, then I authorize and empower my said trustees and their successors in trust, in

their sole discretion, to withhold any or all of said income from such grandchild and to add the same to the principal sum from which said income was derived, and to withhold such income for such period of time as my said trustees and their successors in trust shall, in their discretion, deem for the best interest of such grandchild; and if any one or more of said last named grandchildren shall continue, for any of the above reasons, to be incompetent to receive or manage said income or estate, my said trustees and their successors in trust are hereby authorized to retain, manage and control said principal and the income therefrom, and to hold the same for the lifetime of said grandchild, except such portion thereof as may be necessary for their actual support, and upon his or her death the said principal and income so retained shall descend to the issue or descendants of issue born in lawful wedlock of such grandchild, if any, otherwise to the survivor or survivors of said last named three grandchildren. I further provide that when any one of said last named three grandchildren shall marry and desire a homestead, my said trustees may purchase a suitable homestead for such grandchild out of the one-third ($\frac{1}{3}$) of the personal estate held for such grandchild, providing they shall have retained in their possession sufficient funds belonging to said one-third ($\frac{1}{3}$) share of said personal estate held for his or her benefit, using therefor not to exceed the sum of twenty-five thousand dollars, ($25,000,) the title to said homestead to be taken in the name of my said trustees and said homestead to be occupied by the grandchild for whom it is purchased free of rent, so long as he or she shall desire to occupy the same; and in case of such grandchild abandoning the homestead, my said trustees may manage or sell the same, and the income therefrom shall be held for such grandchild, and in case of the sale of said homestead, the proceeds thereof to revert to the personal estate for the use of said grandchild, as herein provided; and such grandchild, while he or she shall occupy said

homestead, shall pay all taxes thereon, keep the same in good repair and insure the same for the benefit of said trustees, this provision for a homestead not to interfere with the rights of said trustees and their successors in trust to make advancements to such grandchild from his or her one-third ($\frac{1}{3}$) of said personal estate, if in their judgment they shall deem it wise, as hereinbefore provided."

The estate was duly probated in the Cook county probate court, and a final order there entered directing the executors to turn over the trust estate to the trustees on July 19, 1893. The real estate is of the value of $500,000, and the personal estate, of every kind, of the value of about $240,000. They kept an account with each of the three grandchildren, as follows: They divided the net income from the trust estate into three equal parts, and credited to the "Income Trust Account" one part to each grandchild. This account was kept so that they might distribute it to the legatees as they thought advisable, as provided in the will. It was not intended as a distribution, but simply for convenience in book-keeping. They kept another account with each of the legatees, denominated "Investment Trust Account," in which was credited that portion of the income trust account which was not paid over to the legatees. "This was done so that that which accrued might be held subject to a subsequent division." They also kept a third account with each of said grandchildren, called "Private Accounts," into which was put money taken from the income trust account to meet engagements necessary for personal expenses and liabilities, for the private use of the beneficiaries. The money in the private account was placed there only upon the unanimous vote of the trustees.

Frank M. Witbeck is married, but no child or children have been born to him. The sister, Gertrude H., intermarried with Charles L. Grice, of which marriage three children have been born, all infants of tender years. Henry J. Witbeck, the other grandchild, died June 16,

1896, never having been married, and leaving no issue or descendants of issue surviving him. Nathaniel M. Jones was regularly appointed his administrator, who duly qualified and is now acting in that capacity.

Frank M. Witbeck, Gertrude H. Grice, (with her husband, Charles L. Grice, and their infant children,) John H. Witbeck, Nathanial M. Jones, administrator of Henry J. Witbeck, deceased, and the unknown heirs of Henry J., were made defendants to the bill. Frank M., Gertrude H., John H. and the administrator answered, the other defendants being defaulted. Upon the answers filed, and replications thereto, issues were formed as to what disposition should be made of the share of the real estate willed to Henry J.; also as to what disposition should be made of the personal estate willed to him; also to whom should the net income of the trust estate, which was payable to Henry J. in his lifetime, be distributed, and finally, to whom should the income investment account, now amounting to $20,375, be paid. Upon the hearing on the bill, answers, replications and proofs reported by the master, the chancellor found and decreed that said share of the real estate should descend to Frank M. Witbeck and Gertrude H. Grice, as tenants in common, in equal shares, in fee determinable upon the death of both of said tenants leaving no issue or descendants of issue; that said personal estate should descend to the same parties, absolutely, in equal parts or shares; that the net income payable to Henry J. Witbeck in his lifetime should also be paid to them absolutely, and that the $20,375 should be paid over to the administrator, Nathaniel M. Jones. It was also decreed that the trustees should first pay to their solicitors the sum of $2500 as and for their fees in said cause, together with the costs of the litigation.

Complainants below, the trustees, prosecute this appeal, and by their assignment of errors question the correctness of the decree as to the disposition of the real and personal estate and distribution of the $20,375. Ap-

pellee John H. Witbeck raises the same objections to the decree by the assignment of cross-errors. Frank M. Witbeck and Gertrude H. Grice also assign cross-errors on that part of the decree holding that they take the real estate by a determinable fee only, and not in fee simple; also assigning as error the allowance of said solicitors' fee, upon the ground that no such fee should have been allowed; that the amount fixed is unreasonably large, and that whatever allowance is made should be paid out of the residue of the estate in the hands of the trustee, and not out of the particular fund here in question.

MILLARD & ABBEY, for appellants.

JONES & STRONG, LUDINGTON & JONES, and SMOOT & EYER, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Under the several assignments of error counsel for the respective parties present for our decision,—first, under the provisions of the will of the ancestor, Henry Witbeck, deceased, what are the rights of the parties in the one-third share of the real estate devised to Henry J. Witbeck? Second, what are the rights of the parties in the one-third share of the personal estate bequeathed to him? Third, to whom should be paid the $20,375, called "income investment account?" And fourth, what disposition shall be made of the future income from said real and personal estate? It is agreed that these questions must be determined upon a construction of the first, seventeenth, nineteenth and twentieth clauses of the will.

The first clause of the will vests the fee of the real estate and the absolute title to the personal property in the trustees, to hold for the uses and purposes provided in the subsequent clauses. The seventeenth clause gives to the three grandchildren the benefit of the estate during their lifetime, the net income therefrom to be divided into three equal parts, one part to be paid to each of.

the grandchildren from time to time, as the trustees and their successors in trust shall, in their judgment, deem for the best interest of said grandchildren, subject to the restrictions and restraints thereafter mentioned. The nineteenth clause is devoted to the disposition of the respective shares of the beneficiaries in case of their death, and therefore is of controlling importance in the decision of the case. Whatever difficulties there are in arriving at a satisfactory conclusion as to how the testator intended the share or shares of one or more of the grandchildren dying without issue or descendants of issue to be disposed of, arise from the last provision in that clause. The preceding language, "then said one-third share of my residue estate shall go to the survivor or survivors of said last named three grandchildren," would, under section 13 of chapter 30 of our statute entitled "Conveyances," vest the fee simple title to the real estate in Frank M. and Gertrude H., were it not for the further provision: "And I further provide and direct that in case of the death of all three of said last named grandchildren without either of them leaving such issue or descendants of issue them surviving, then all of said estate hereby provided for such last named three grandchildren shall descend to my son John H. Witbeck and his heirs-at-law."

Three views are presented as to the title vesting in these parties as the surviving brother and sister of Henry J., deceased: First, as insisted upon by them, that they take the fee simple title to the real estate and absolute ownership of the personal property; second, as held by the circuit court, that they take a determinable fee in the realty and an unqualified title to the personalty; and third, as contended by appellants and John H. Witbeck, that they take but a life estate or interest in both the realty and personalty.

We see no escape from the conclusion that the devise over to John H. Witbeck and his heirs limits the estate which would otherwise vest in the survivors, cutting it

down either to a base or determinable fee or a mere life estate. In *Friedman* v. *Steiner*, 107 Ill. 125, the language of the will under consideration was: "I give and bequeath all the rest and residue of my said estate, real, personal and mixed, * * * unto my beloved wife, Rebecca Steiner, and unto her heirs and assigns forever, to the total exclusion of any and all person or persons whatsoever, provided, however, upon the express condition hereby made by me, in case the said Rebecca Steiner, after my decease, shall die intestate and without leaving her surviving lawful issue, * * * that then and in such event all the rest and residue of my said estate so bequeathed and devised unto her * * * shall at once be converted into money," and paid over to certain persons named, among them Pauline Friedman, who was the appellant. This was held to convey to Rebecca Steiner a determinable fee. In *Summers* v. *Smith*, 127 Ill. 645, it was again held that a will containing a bequest "to my youngest son, Westley Clark Smith, to have and to hold to my said son and his heirs forever," followed by the condition, "in case any of my sons to whom I have bequeathed property in this my last will and testament should die without heirs of his body, the real estate I have bequeathed to him shall go to his surviving brothers or brother and the personalty to all the other heirs, equally," vested in the son, Westley Clark Smith, a fee determinable. To the same effect is *Strain* v. *Sweeny*, 163 Ill. 603, and *Smith* v. *Kimbell*, 153 id. 368.

In another line of decisions, beginning with *Siegwald* v. *Siegwald*, 37 Ill. 430, in the construction of wills somewhat similar to those construed in the foregoing cases we have held that the first devisee took only a life estate. In the *Siegwald case* the devise was as follows: "I give and bequeath unto my beloved wife, Antonia, all my real and personal estate, wheresoever situated, in fee simple and absolute forever, that is to say, that my said wife shall have all the benefits thereof until the expiration of

her life, at which time my son, Anton, shall be the only heir of real and personal estate what may be left." In the decision of the case it was said (p. 436): "Wills, like all other instruments, must be so construed as to effectuate the intention of the testator, and that intention must be ascertained from the language employed in the instrument itself, and in arriving at the intention all of the language employed must be considered. It seems to be evident that the testator did not intend to devise to his widow a fee simple absolute, otherwise he would not have added the limiting clause. Had that been the intention, he had fully accomplished the purpose without employing the latter clause; but when he did so, it must have been to limit or qualify the estate already devised." See *Bergan* v. *Cahill*, 55 Ill. 160; *Walker* v. *Pritchard*, 121 id. 221; *Siddons* v. *Cockrell*, 131 id. 653; *Johnson* v. *Johnson*, 98 id. 564; *Healy* v. *Eastlake*, 152 id. 424; *Thomas* v. *Miller*, 161 id. 60.

Under either line of these decisions it is clear that the language of the nineteenth clause of the will under consideration does not vest a fee simple title of inheritance in the surviving brother and sister. Whether the title which they would take by the construction of the language, "then said one-third," etc., shall go to the survivor or survivors of said last named three grandchildren, followed by the devise over to John H. Witbeck and his heirs, would be a fee determinable or a mere life estate, is not, in the view we take of the case, important. Counsel for appellants err, however, in their contention that the ground of distinction between the determinable fee cases and the life estate cases, above cited, is that in the former the devise to the first party named was accompanied with such words of inheritance as would at common law vest the fee, whereas in the latter the first gift was without such words. It is admitted that this distinction does not hold good in the case of *Smith* v. *Kimbell*, *supra*, but that case is criticised as being in conflict with the other life estate cases. The real ground of

distinction between the two classes of decisions is misapprehended. In the determinable fee cases no intention whatever is indicated by the testator to give only a life estate. The fee is given, and the only limitation is a condition attached that the devisee shall die leaving heirs, issue, children, etc. There the will does not provide that the heir, issue or children shall take the estate upon the death of the devisee, thereby indicating an intention to limit the first estate to one for life, but simply provides the fee shall terminate upon the failure of the devisee to comply with the condition, and the moment the condition is complied with, that which was before a base, conditional or determinable fee becomes a fee simple absolute.

It cannot be seriously contended that under the provisions of the will construed in *Smith* v. *Kimbell, supra,* Sarah Jane Spears took but a life estate. No such intention can by any possibility be attributed to the testator. She was, under the provisions of section 13 above referred to, vested with a fee simple title just as effectually as though there had been the common law words of inheritance; but following that gift was the condition, "should the said Sarah Jane Spears die leaving no heirs, I will," etc., thereby meaning that if she did die leaving heirs the title in her should become a fee simple title of inheritance, but if not, the fee should terminate. One of the peculiarities of a fee determinable is, that upon the happening of the event or the performance of the condition named the title is changed into a fee simple title. *Friedman* v. *Steiner, supra.*

There is no conflict or inconsistency whatever between the case of *Smith* v. *Kimbell* and other decisions of this court, and ordinarily the language used in this will would lead to the conclusion that the surviving brother. and sister took an estate in fee determinable upon both dying leaving no issue or descendants of issue. We think, however, that in the decision of each of the questions here raised the testator must be held to have intended

that the interest of the survivor or survivors to accrue in a share or shares of one or more of the grandchildren dying without issue or descendants of issue should be owned and enjoyed subject to the same restrictions and conditions upon which the original shares are given. We see no other way to give practical effect to the clearly expressed intention that in case of the death of all three without either of them leaving such issue or descendants of issue then surviving, then all of said estate thereby provided for such last named three grandchildren should descend to the son, John H. Witbeck, and his heirs-at-law. And this view seems to be well supported by authority. It is said in Theobald on Wills (p. 516): "Clauses in a will disposing of the shares of devisees and legatees dying before a given period or event do not, without a positive indication of intention, extend to shares which have once accrued under these clauses so as to pass them a second time. Accrued shares will go with the original shares if there is an intention expressed that they should do so." And in classifying those conditions which will pass accrued shares as a fifth class, it is said: "And a gift over of the whole is convincing evidence of the same intention. In such a case 'share' must have meant every interest accruing, as well as original, for otherwise the estate would go away from the issue piecemeal, whereas it is obvious nothing was intended to go over, but that all should go over at once on failure of issue of all the children, as if all but one had died without issue who was intended to take all." 29 Am. & Eng. Ency. of Law, 494.

*Doe* v. *Webb*, 1 Taunt. 234, was ejectment. The lessors of the plaintiff claimed twenty-five undivided 360ths of the premises in question. If cross-remainders were created by the devise in question the lessors of the plaintiff were not entitled, and in that case a non-suit was to be entered. The character of the devises sufficiently appears from the following extract from the opinion of Mansfield, C. J.: "The method to bring the estate all to-

gether is to imply cross-remainders.   Here the testatrix devises her moiety of her several manors and lands, and all her moiety of her tithes, etc., treating it as one entire subject of devise, to her husband in the first place.   She then adds several devises over, and in each of them she studiously describes her estate by the most collective and comprehensive terms, and devises all that she had before devised, to her sons, and their sons and their daughters, in succession.   Afterwards, in default of such issue, she gives the same moiety to her three daughters and the heirs of their bodies as tenants in common, and not as joint tenants; and in default of such issue (not thereby meaning her daughters, for to them she gave estates, respectively, but their heirs of their bodies,) she gave the same to her own right heirs.   What was the same?   It is evident from every preceding devise that the same was the whole.   She had in no part of her will disposed of less than the whole.   It is plain, then, that it was not her intention that a part should go to her heir-at-law, but the whole.   She has given him nothing, unless the issue of all her daughters should fail, when, if the heir-at-law was to take anything, he was to take the whole estate."   The judgment was for the defendant.

In 2 Jarman on Wills (R. & T. ed. p. 552) it is said: "Sir G. Jessel, M. R. said (in *Maden* v. *Taylor*, 45 L. J. Ch. 569,) that the true rule was laid down in *Doe* v. *Webb*, that you must ascertain whether the testator intended the whole estate to go over together.   If you once found that to be intended, you were not to let a fraction of it descend to the heir-at-law in the meantime.   You were to assume that what was to go over together, being the entire estate, was to remain subject to the prior limitations until the period when it was to go over arrived.   He thought that principle applied to a case like that before him, where it was plain in one event the whole estate was to go over together, although it was possible that another event might happen in which that intention

might be disappointed. He therefore held that cross-remainders must be implied between the children of each niece, otherwise, while the particular event was still in suspense, a fraction might, by the death of one child without issue, descend to the heir-at-law." To the same effect is *Doe* v. *Birkhead*, 4 Exch. 110; *Douglas* v. *Andrews*, 14 Beav. 347; *Dutton* v. *Crowdy*, 33 id. 272; *In re Jarman's Trusts*, L. R. 1 Eq. 71.

The twentieth clause of the will provides: "And in no case shall any part of the real estate left by me for their use and benefit, or the proceeds thereof if sold, be advanced or conveyed to said grandchildren, or any one of them, during their lifetime," and this restriction is consistent with the view that the survivor or survivors must take the accruing share of a deceased brother or sister in conformity with and under the conditions of the will. We think the trustees should hold the share of Henry J. in the real estate, and the proceeds of any real estate sold or to be sold, in their hands for the benefit of Frank M. Witbeck and Gertrude H. Grice, placing to the credit of each an equal part thereof, and manage and control the same, accounting for the income derived therefrom, in all respects as provided in the will for the management of the original shares. If Frank M. Witbeck or Gertrude H. Grice should die leaving no issue or descendants of issue, his or her share in the one-third of said real estate will pass with his or her original share to the survivor, to be held by the trustees in the same manner as the original shares; and if the last survivor shall die leaving no issue or descendants of issue, then the fee simple title to the whole of the trust real estate must vest in John H. Witbeck and his heirs. If, however, Frank M. Witbeck or Gertrude H. Grice should die leaving issue or descendants of issue, and afterwards the other should die leaving no issue or descendants of issue, then the share of the last survivor will go back to such issue or descendants of issue of the other.

The provisions of the last sentence of the nineteenth clause, standing alone, are broad enough to carry over the personal estate in the same manner. The twentieth clause, however, provides that the said trustees may advance from said personal estate not to exceed the full amount thereof, and also that they may withhold the income of any one of said grandchildren's share, except such part thereof as may be necessary for their actual support in case of their becoming intemperate or otherwise incompetent to manage his or her estate, or shall be a spendthrift, "and upon his or her death the said principal and income so retained shall descend to the issue or descendants of issue born in lawful wedlock of such grandchild, if any, otherwise to the survivor or survivors of said last named three grandchildren." Giving effect to these provisions, we think the decree of the court below ordering the trustees to pay over and deliver to said Frank M. Witbeck and Gertrude H. Grice, in equal parts, the share of the personal estate left to Henry J. Witbeck, should be affirmed.

We are also of the opinion that the $20,375 which was withheld from Henry J. by the trustees, under the facts shown by the evidence, should be divided equally between Frank M. Witbeck and Gertrude H. Grice. The fact that the trustees had not actually turned this fund back into the principal estate, as they were authorized to do by clause 20 of the will, but kept it separate as a matter of convenience in book-keeping, did not amount to a transfer of it to the individual estate of Henry J. Witbeck.

Appellees contend that the allowance by the trial court of $2500 as solicitors' fees was error,—first, because the pleadings did not claim any solicitors' fees; second, that the allowance was excessive; and third, that the fees should, if allowed, be paid out of the residue of the estate in the hands of the trustees other than that involved in this suit. They do not dispute the right of appellants to have some allowance if their claim is prop-

erly prosecuted. Solicitors' fees in cases of this kind, when allowed, are treated as costs, and need not be specifically claimed in the bill. The true interpretation of this will is attended with much difficulty, and the allowance does not appear to be excessive. We said in *Woman's Union Missionary Society* v. *Mead*, 131 Ill. 338: "As to the amounts allowed by the court to the respective parties, they are so far in the discretion of the chancellor that in the absence of proof of the abuse of that discretion we cannot interfere." In *Goodwillie* v. *Milliman*, 56 Ill. 523, the allowance was set aside, but only because upon the face of the record it appeared to be excessive. In determining what fund should pay solicitors' fees it is announced in Daniell's Chancery Practice (vol. 2, p. 1431): "But although the rule is that the costs of litigation in the course of administering a will are given out of the general assets in preference to the particular fund, yet if the particular fund has been severed from the residue and the question is merely between the person claiming to be entitled to it, the costs must come out of the particular fund." Here the controversy is as to the disposition of the share of the deceased legatee, but the questions raised, both below and here, affect the rights of all the parties to the trust estate, and our decision must serve as a guide to the trustees in the future performance of their duties.

The view taken of the case renders the question as to what fund the expenses of the litigation shall be paid from of little importance. We think, however, that in view of all the circumstances of the case they should be paid out of the entire estate.

The decree of the circuit court will be reversed in respect to the matters indicated and in all others affirmed. The cause will be remanded, with directions to the circuit court to enter a decree in conformity with the views here expressed, the costs of this appeal to be paid by the trustees as other expenses of the litigation.

*Reversed and remanded.*