(No. 32216.—

HARRIS TRUST & SAVINGS BANK, Trustee, *et al.*, Appellees, *vs.* LOU B. JACKSON *et al.*, Appellants.

*Opinion filed May 22, 1952.*

YOWELL, THORPE, SCHNEBERGER & KELLY, of Chicago, (JOHN J. YOWELL, of counsel,) for appellants Suzanne Jackson *et al.;* WINSTON, STRAWN, BLACK & TOWNER, of Chicago, (JOHN C. SLADE, and CALVIN P. SAWYIER, of counsel,) for separate appellant Lou B. Jackson.

VERNON R. LOUCKS, and JAMES D. PETERSON, both of Chicago, (CHARLES O. LOUCKS, and JAMES L. HENRY, of counsel,) for appellees William T. Hargraves *et al.,* Admrs.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The Harris Trust and Savings Bank, as trustee under the will of Howard B. Jackson, brought an action in the circuit court of Cook County seeking a construction of the will and a determination of certain questions which had arisen upon the termination of the trust. Lou B. Jackson, widow of a nephew of the testator, and Suzanne and

Audrey Jackson, granddaughters of the nephew and great grandnieces of the testator, prosecute this appeal from the ensuing decree. A freehold is necessarily involved.

Howard B. Jackson died testate on January 19, 1923. He was survived by his widow, Florence, his brother, Frank G. Jackson, and his nephew, Arthur S. Jackson. The questions presented concern the ultimate disposition of the trust assets. The will directed the trustee, upon the cessation of two prior life estates, to transfer and deliver the assets to the testator's nephew, Arthur S. Jackson, or if he be dead, as in fact he was, then to his lawful heirs. The issues are: (1) whether the gift over upon Arthur's death refers to his death before that of the last surviving life tenant rather than to his death before that of the testator, and, (2) if so, whether Arthur's "lawful heirs" include his widow.

The case turns upon the construction of paragraph 4 of the will, which provided: "If either my wife, Florence May Jackson, or my brother, Frank G. Jackson, shall survive me, then I give, devise and bequeath to Harris Trust and Savings Bank * * * as Trustee, all of the property, real, personal or mixed, which I may own at my death * * * to be held on the following trusts * * *: (a) All of the income from the trust estate shall be paid to my wife, Florence May Jackson, if she be alive, for and during the remainder of her lifetime, and from and after her death (or from and after my death if my said wife dies before I do) it shall be paid to my brother, Frank G. Jackson, for and during the remainder of his lifetime * * *. (b) On the death of my said wife, Florence May Jackson, if she survive my said brother, Frank G. Jackson, or upon the death of my said brother, if he survives my said wife, the trust shall cease and terminate and the principal thereof with any accumulated income shall be transferred and delivered by my Trustee to my nephew, Arthur S. Jackson, or if he be dead, then to his lawful heirs." By paragraph 5, the testator provided: "If neither my said

wife, nor my said brother survive me, then I give, devise and bequeath all my property * * * to my said nephew, Arthur S. Jackson, and if he also be dead, then to the heirs at law of said Arthur S. Jackson."

The testator's wife, Florence, and his brother, Frank, both survived him so that the trust became effective and the trustee entered upon its duties and paid the income to Florence Jackson during her lifetime. Florence Jackson died on June 5, 1946, six years after the death of the brother, Frank Jackson. Her death thus became the event fixed by the testator for the termination of the trust and the distribution of its assets under paragraph 4(b). Arthur, however, was also dead, his death having occurred on September 28, 1933. He was survived by his widow, Lou B. Jackson, and a son, Arthur S. Jackson, Jr. The latter died intestate on June 3, 1942, leaving as his only heirs-at-law his two daughters, Suzanne and Audrey Jackson.

In the action brought by the trustee, Suzanne and Audrey Jackson, and Lou B. Jackson argued that Arthur S. Jackson, to receive the trust assets under paragraph 4(b), had to survive the last life tenant and therefore, under the substitutionary provision of the paragraph the trustee is required to deliver the principal and accumulated income to those persons who come within the classification "lawful heirs" of Arthur. Lou B. Jackson further urged that she falls within that classification under the amendment to the Illinois law of descent which became effective on June 30, 1923, even though the will was executed and the testator died prior to that date. On the other hand, the administrator of the estate of Florence Jackson contended that Arthur, having survived the testator, took an absolutely vested remainder, and hence the trust assets should be transferred to Arthur's estate and not to his lawful heirs.

Evidence was taken by a master in chancery and the cause then heard by the chancellor upon exceptions to his

report. The chancellor entered a decree confirming the master's recommendation and holding that Arthur S. Jackson, "because he survived the testator, acquired an irrevocably vested interest in the *corpus* of the trust." The decree entered therefore directed the trustee to deliver the trust assets to Lou B. Jackson, as executrix of the will of Arthur S. Jackson. From that decree this appeal has been taken.

The chancellor also found that the remainder limited to Arthur was vested, subject to being divested. This finding was correct. (*Storkan* v. *Ziska,* 406 Ill. 259; *Smith* v. *Shepard,* 370 Ill. 491.) The critical consideration is the effect of the language of divestiture employed by the will. Does the reference to the death of Arthur contemplate only his death at a time prior to the testator's death or does it refer to his death prior to the death of the last life tenant? In a written opinion, the chancellor deemed the answer to be clear because of two recent decisions of this court, assertedly establishing the rule that where there are substitutionary gifts in remainder after limited intermediate gifts, the death of the primary remainderman is referable to a time prior to that of the testator, and, therefore, if the primary remainderman survives the testator, the property belongs to him absolutely. Three cases, *Knight* v. *Pottgieser,* 176 Ill. 368, *Murphy* v. *Westhoff,* 386 Ill. 136, and *Peadro* v. *Peadro,* 400 Ill. 482, are cited to support this proposition, but since the holding of the *Knight case* is subject to considerable doubt, (*Warrington* v. *Chester,* 294 Ill. 524, 528-529; Carey and Schuyler, Illinois Law of Future Interests, p. 259,) it was upon the latter two decisions that the trial court placed reliance, stating: "* * * *Murphy* v. *Westhoff* and *Peadro* v. *Peadro, supra,* left no doubt that the [above] rule was one of general application and freed it from all supposed restrictions. The reason for such a result cannot be predicated so much upon inter-

pretation, as it can upon the policy of the law to make future interests irrevocably vested at the earliest possible moment."

The cardinal rule of testamentary construction to which all other rules must yield is to ascertain the intention of the testator from the will itself and to effectuate this intention, unless contrary to some established rule of law or public policy. (*Vollmer* v. *McGowan*, 409 Ill. 306, 311.) However difficult its application may be in particular fact situations, this statement is no empty platitude. Rules of construction, such as the one urged by appellee and adopted by the chancellor, govern only where the language of the will is so ambiguous as to place the testator's intention in doubt. *Trabue* v. *Gillham*, 408 Ill. 508; *Storkan* v. *Ziska*, 406 Ill. 259.

The case last cited is illuminating. A trust agreement, after requiring the trustee to pay over the income to the settlor during his life and after his death in equal shares to his five named children, specified that the trust estate was to be divided among the children in the event the property held in trust was not sold within twenty-one years after the settlor's death. Then followed a provision that "And in case of the death of any of said children, then such shares [of the estate] coming to such deceased child or children shall descend to the heirs of such deceased child or children." After the death of the settlor but before the expiration of the twenty-one years, one of the settlor's children, Adela, died leaving all her property by will to certain beneficiaries. The trial court held that Adela, having survived the testator, had an indefeasibly vested interest which passed under her will, and the Appellate Court affirmed, relying upon the rule of construction supposedly laid down in *Murphy* v. *Westhoff*, 386 Ill. 136, and *Peadro* v. *Peadro*, 400 Ill. 482. Upon further appeal, this court reversed, observing: "The same rules of construction used in regard to wills are alike applicable to the construction of trust

agreements. * * * The question then of paramount importance is the settlor's intention. This seems to be the general purpose, rather than to determine which technical rule of construction can be applied to the facts and adopted regardless of the stated and apparent intention and desire of the settlor. * * * If the intention may be gathered from its language without reference to rules of construction, there is no occasion to use the latter. Where the use of rules as a presumed intention so twist and warp the evident meaning of a will as to render it ambiguous or unreasonable, and when, on the other hand, the words used in their ordinary sense are plain and their meaning clear, construction demands the use of the plain intention over the presumed intention, which is fixed by rules used only where the actual intent cannot be ascertained." Since the court found that the language of the trust instrument clearly directed that in the event one of the named children should die before the termination of the trust, that child's share should go to his or her heirs, the decree of the trial court and the judgment of the Appellate Court were reversed.

While the language of the two instruments involved is, of course, different, the analogy between the *Storkan case* and the instant one is obvious. Here, also, the intent of the testator is so clearly expressed as to completely negate the application of any technical rules of construction. This is apparent from the scheme of the will. Paragraph 4(a) and paragraph 5 are concerned with events at the death of the testator; the provision at issue—paragraph 4(b)—covers the subsequent situation,—what is to occur on the death of the life tenants. In such a scheme, the phrase "or if he [Arthur] be dead," cannot logically be separated from the key words introducing the sentence, "On the death of [the life tenants]." These words fix the time for termination of the trust; they fix also the time for Arthur's interest to take effect in possession. The duty

of the trustee is specified—to deliver the assets to Arthur, "or if he be dead, then to his lawful heirs." In this language there is no intimation that the trustee, having ascertained that Arthur is dead, must make further inquiry as to the date of his death, and must then correlate that date with the date of the testator's death. Any such suggestion must come from a source other than the words of the testator. This conclusion is fortified by the fact that the language of the will demonstrates that the testator knew how to correlate the death of a beneficiary with his own death. Thus, in paragraph 4(a) he employs the phrase, "If my said wife dies before I do." That the termination of the trust is the pivotal feature of paragraph 4(b) is of further significance upon examination of the court's opinion in *Murphy* v. *Westhoff*, 386 136, relied upon so heavily by appellee. It was there noted, as a major basis for distinguishing *Smith* v. *Shepard*, 370 Ill. 491, "that the will in that case [*Smith* v. *Shepard*] provided for the disposition of that portion of the estate remaining at the death of his [the testator's] wife and that the time of the division was the death of the wife." In view of the foregoing factors, we are of the opinion that, as in the *Storkan case*, "it is unnecessary to resort to technical rules of construction to ascertain the intent" of the testator because the testator has plainly and clearly directed that in the event of Arthur's death before that of the last life tenant, the trust estate should go to Arthur's lawful heirs.

While it becomes unnecessary to consider the application of *Murphy* v. *Westhoff*, 386 Ill. 136, and *Peadro* v. *Peadro*, 400 Ill. 482, it is apparent from the history and development of this case and of the *Storkan case* that the law has become unsettled on the point here involved. (Carey and Schuyler, Illinois Law of Future Interests, Cumulative Pocket Part (1947), pp. 104-107, 80-81; 13 Ill. Law Review 859, 861; 1949 Ill. Law Forum 530; 37 Ill. Bar Journal, 266.) Since this is so, we deem it appropriate

to state that the scope of *Murphy* v. *Westhoff* and *Peadro* v. *Peadro* is limited to their particular factual situations, and that the rule, as laid down in *Burlet* v. *Burlet,* 246 Ill. 563, and *Smith* v. *Shepard,* 370 Ill. 491, is still the law in this field, *i.e.,* "* * * when a gift over is preceded by a particular estate the gift over will usually take effect if the contingency happens at any time during the period of the particular estate." (*Smith* v. *Shepard,* at p. 495.) Therefore, unless a contrary intent appears from the language of the will, in cases where the gifts are substitutionary, "death" is referable to that point of time when the first gift takes effect in possession, and the first taker must survive to that time. The argument that there is no contingency in the instant situation because the death of the primary remainderman is certain to occur ignores what is obviously the controlling consideration,—the sequence of deaths among the life tenants and the primary remainderman, which is not at all certain.

The remaining issue for consideration is whether Arthur Jackson's "lawful heirs" included his widow. The word "heirs" is a technical word with a fixed legal meaning when used in a will, and, unless controlled by or inconsistent with the context, must be interpreted according to its strict legal meaning. When thus construed it includes and designates all those persons, whether many or few, upon whom the law would cast the inheritance in case of intestacy. *Dillman* v. *Dillman,* 409 Ill. 494; *Richards* v. *Miller,* 62 Ill. 417.

At the time of the testator's death and for some years before, a surviving spouse could be a "lawful heir" with respect to personalty, even though there were also children surviving. (*Walker* v. *Walker,* 283 Ill. 11.) However, prior to 1923, the widow did not inherit any portion of the real estate where there were surviving children, but took an estate of dower. The Statute of Descent was amended in 1923 (Laws of 1923, p. 325,) to provide

that where an intestate died leaving a widow and also a child or children, the widow was to receive as her absolute estate, in lieu of dower, one third of the personal property and one third of each parcel of real estate in which dower was waived. While the estate is not immediately vested by law, it may become vested if the widow so chooses and manifests her choice by failing to elect to take dower within the statutory period. She is to be considered as an heir, because her own act determines whether or not she has that status. *Dillman* v. *Dillman,* 409 Ill. 494; *Bundy* v. *Solon,* 384 Ill. 137.

We come thus to the question whether the scope of the phrase "lawful heirs" is to be determined at the death of the testator, six months before the 1923 amendment became effective, or at the time of Arthur Jackson's death in 1933. It seems clear that the testator, having employed the phrase in its technical sense, was saying, in effect, "Now let the law take its course." Had he desired a particular group as defined by the statute then in effect to be the recipients of the gift over, he could easily have so specified. The reasonable inference is that, absent a contrary intent of the testator as shown by additional language or circumstances, the law of intestacy in force at the death of the named ancestor, here Arthur Jackson, was intended. (*Butterfield* v. *Sawyer,* 187 Ill. 598; see, Casner, 53 Harv. Law Rev. 207, 214, 228, and cases there cited.) In this case, therefore, since Lou B. Jackson failed to elect to take dower within the statutory period, she falls within the classification "lawful heirs."

The decree of the circuit court of Cook County is reversed and the cause remanded, with directions to enter ·a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*