GOLDA PHELPS *et al.,* Appellees, *vs.* MABEL SEELEY *et al.,*
Appellants.

*Opinion filed May 24, 1954.*

J. ELWOOD POPHAM, of Charleston, for appellants.

GLEN D. NEAL, of Toledo, and CRAIG & CRAIG, of Mattoon, (J. H. ANDERSON, of counsel,) for appellees.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal from a decree entered by the circuit court of Cumberland County in a partition suit. The interests of the parties in the real estate in question depend upon a construction of the will of W. H. Seeley, who died in 1905.

W. H. Seeley was married three times. He was survived by his third wife, Leahbelle Seeley, and nine children. Four of the children were born of his first marriage and none of his second. On March 29, 1902, when he executed his will, four children, Inez, Daniel, Jacob and James had been born of his third marriage. A fifth child of the third marriage, Roy Seeley, was born after the will was executed but before his father's death. A sixth child of the third marriage, Golda Seeley Phelps, was born four months after her father's death.

At the time of his death, W. H. Seeley owned the real estate in question in fee simple. The pertinent portions of his will are the second and fourth paragraphs: "Second, I hereby give and devise all of my property, both Real and Personal to my wife LEAHBELLE SEELEY, subject to the payment of debts and funeral expenses, to have and hold for the use and benefit of herself and our three sons Daniel Seeley, Jacob Seeley and James Seeley, So long as She shall remain my widow. * * * Fourth, After the

death of my wife, or if she should remarry, then it is my will that said Real Estate shall be immediately divided between said three sons in equal parts according to the value thereof, and if either one should die before coming into possession of the same the survivor or survivors shall take the same in equal parts. * * *."

Roy Seeley, who was born after the will was executed but before his father's death, died intestate in 1942, leaving his widow, Ruah Seeley, his mother, and twenty-one collateral heirs-at-law. James Seeley, one of the three sons named in the will, died in 1948, leaving as his heirs-at-law his wife, Mabel, and their three children, Raymond Seeley, Phyllis Akin and Wilma Pedigo, who are the defendants in this action. Thereafter, in 1950, Leahbelle Seeley, the testator's widow, died intestate without having remarried.

In 1936 Daniel Seeley executed a real estate mortgage of a part of his interest in the property to Charles M. Connor to secure a promissory note. After default, a decree of strict foreclosure was entered in the circuit court of Cumberland County and it is not controverted that on December 19, 1941, Connor became the owner of an undivided one-fifth interest in the property.

By their complaint, the plaintiffs, Golda Seeley Phelps, Jacob Seeley and Daniel Seeley, set forth alternative theories to be applied in the construction of the will. The facts were stipulated. The decree adjudged that the devise to James Seeley created a determinable or base fee which terminated upon his death before the death of his mother, the life tenant; that his heirs have no interest in the property; that the after-born children, Roy Seeley and Golda Phelps, take no part of the estate of their father, and that the fee-simple interests in the real estate are: Jacob Seeley, a one-half interest, Daniel Seeley, three tenths, and Charles M. Connor, one fifth.

The issue principally argued, and the only issue open for our consideration, is the correctness of the decree

insofar as it holds that the defendants, the heirs of James Seeley, take nothing under the will. The decree is attacked upon the ground that the words of survival in the fourth paragraph of the will, properly construed, mean that in order to take under the will each of the three sons named in it was required only to survive his father, the testator, and was not required to survive his mother, the life tenant. James Seeley met this requirement, and therefore, defendants contend, they take his interest under the will as his heirs.

Of his eight children who were living when he made his will, the testator favored only three, excluding four by his first marriage and one by his third. And as to the three favored children, only the "survivor or survivors" was to take. Whether survival refers to the death of the testator or to the death of the life tenant, the heirs of any of the three favored children who failed to survive were excluded under the will. With the wisdom of these provisions we are not concerned. Our business is to ascertain the testator's intention. *Barnhart* v. *Barnhart,* 415 Ill. 303; *Harris Trust and Savings Bank* v. *Jackson,* 412 Ill. 261; *Vollmer* v. *McGowan,* 409 Ill. 306.

That intention seems to us to be clear, and to be expressed without ambiguity. By the second paragraph of his will, the testator created a life estate for his wife so long as she should remain his widow. Having made provision for his wife for her life or until her remarriage, the testator proceeded to dispose of his property when either event occurred. He said, "* * * then it is my will that said real estate should be immediately divided * * *." The word "then" is sometimes used as an adverb of time and sometimes as referring to an event. (*Tolley* v. *Wilson,* 371 Ill. 124, 133.) Here, the use of the two words "then" and "immediately" in the same clause indicates a clearcut reference to time. The following words in the same sentence, "and if either one should

die before coming into possession," show that the testator was providing for a contingency. The phrase "coming into possession" refers directly to the preceding words "immediately divided." The contingency having been described, the testator stated that "the survivor or survivors" should take his property in equal parts. In our opinion the language employed reasonably admits of but a single conclusion: that only those of his three named sons, Jacob, James and Daniel, who should be living when the life tenancy terminated, whether by death of the life tenant or by her remarriage, should "come into possession" and take the property.

In support of their contention that the phrase "coming into possession" refers to the time of the testator's death, the appellants argue that the language used in the second paragraph of the will devising a life estate to the widow, "to have and hold for the use and benefit of herself and our three sons," created a trust in the widow and an immediate equitable estate in all the sons living at the testator's death. Even if we assume that such an equitable interest might satisfy the requirement of "coming into possession," we hold that no such equitable interest was created.

The language in question shows concern that the testator's wife enjoy the income from the property so long as she needed it. The words "for the use and benefit of herself and our three sons" express the purpose which induced him to make the devise, and do not create a trust. In *Dee* v. *Dee,* 212 Ill. 338, the testator devised to his wife "all of my property, both real and personal to her use during her life or as long as she shall remain my widow to receive all the rents and profits thereof for the benefit of my family." Holding that a trust was not created, this court said: "In using that expression [for the benefit of my family] we think he had in mind the group of persons residing in his household, consisting of his wife and children, and that his design was that his wife should use the

income from all his property as her discretion directed for the benefit of those persons so long as they continued members of that household. * * * Under the second clause of the will of Patrick Dee, his widow took a life estate in all his property, both real and personal, determinable, however, upon her re-marriage." (212 Ill. 338, 349, 350.) Similarly, in the present case, there is no language in the second paragraph indicating an intention on the part of the testator to create any estate other than a life estate in his widow, determinable upon her remarriage.

The trial judge properly held that the words "survivor or survivors" referred to the named condition "die before coming into possession," that is, before the death or remarriage of the life tenant. The three named sons took vested remainders subject to divestiture. When James Seeley died "before coming into possession" and before the death of the life tenant, the condition stated in his father's will occurred, and divested him of his estate.

The defendants rely upon *Murphy* v. *Westhoff,* 386 Ill. 136, and *Peadro* v. *Peadro,* 400 Ill. 482, as sustaining their position that the words of survivorship were used by the testator to refer to his own death rather than to the death of the life tenant. The recent case of *Harris Trust and Savings Bank* v. *Jackson,* 412 Ill. 261, specifically limited the two cases relied upon to their particular factual situations and reaffirmed the familiar rule stated in *Burlet* v. *Burlet,* 246 Ill. 563, and *Smith* v. *Shepard,* 370 Ill. 491, that when a gift over is preceded by a particular estate, it will normally take effect if the contingency happens at any time before the termination of the particular estate. We added, "Therefore, unless a contrary intent appears from the language of the will, in cases where the gifts are substitutionary, 'death' is referable to that point of time when the first gift takes effect in possession, and the first taker must survive to that time." (412 Ill. 261, 269.) Here, the "first takers" are the three

named sons and each must survive the death or remarriage of his mother, the life tenant, in order to take. The effect of our decision in the *Jackson case* has been correctly analyzed as follows: "From this language and from the *Storkan case* [*Storkan* v. *Ziska,* 406 Ill. 259,] it may be concluded that the Murphy and Peadro cases need no longer be regarded as jeopardizing the integrity of the long established rule that upon a gift to one for life, followed by a gift in remainder, which is followed in turn by a gift over upon the 'death' of one or more remaindermen, the word 'death' is referable to a death at any time prior to the ending of the supporting estate." Carey and Schuyler, Illinois Law of Future Interests, Cumulative Pocket Part, (1954) p. 132.

The defendants, however, argue that we must ignore the natural meaning of the words the testator used, and decide the case by a mechanical application of what is said to be "the judicial interpretation of words of survivorship" which prevailed when the will was written. The argument begins with the following statement in *Barnhart* v. *Barnhart,* 415 Ill. 303, 316: "In construing a will, the law existing at the time of its execution or as of the date of the testator's death must govern, whether that law be founded upon statute or judicial decision." It is then pointed out that both of the two witnesses to Seeley's will were lawyers, and that "presumably" one of them drafted his will. The next step is the assumption that "undoubtedly the attorney drafting the W. H. Seeley will had the Arnold case before him and used same as a guide." The reference is to *Arnold* v. *Alden,* 173 Ill. 229, decided in 1898, and to the following language in that case (p. 241): "The natural interpretation of the language of this will would appear to be, that the survivorship should be referred to the date of the expiration of the intervening estate, or of the period of twenty-one years. But repeated

decisions both in England and this country refer the survivorship, not to the termination of the intermediate estate, but to the testator's death, unless a contrary intention is manifest from the rest of the will. Words of survivorship in a context, similar to that in the present will, have acquired a technical meaning, differing from the sense in which they are otherwise to be taken, referring the survivorship to the testator's own death." The conclusion is then drawn that the *Arnold case* established "a rule of law preventing the 'words of survivorship' from referring to the death of the life tenant even though such was found to be the clearly expressed intention of the testator * * *."

This argument overlooks the fact that the state of the law when a will becomes effective is important only when the intention of the testator is otherwise doubtful. It does not then conclusively control, but is important for the material assistance it affords in determining intention. (*Carpenter* v. *Browning,* 98 Ill. 282.) And even if we were willing to make the factual assumptions which the defendants' argument requires, we could not agree that an isolated statement in a single opinion had the effect of substituting an arbitrary rule of construction for the intention which the words express. This court has long recognized that wills are construed to find out what the testator meant by the words he used. (cf. *Ridgeway* v. *Underwood,* 67 Ill. 419.) Other opinions, immediately before and immediately after the *Arnold case,* make it clear, by their emphasis upon the intent of the testator, that that opinion was not intended to substitute a system of construction by rubric for an effort to ascertain the intention of the man who wrote the will. (*Mann* v. *Martin,* 172 Ill. 18; *Lombard* v. *Witbeck,* 173 Ill. 396.) The argument of the defendants is ingenious, but not persuasive.

Although they did not prosecute a cross appeal, plaintiffs seek to present in their brief a question concerning

the interest of Golda Seeley Phelps, who was born four months after the death of her father. They contend that there is no evidence indicating an intention to disinherit the posthumous child, that the particular circumstances of this case present an exception to the rule announced in *Hedlund* v. *Miner*, 395 Ill. 217, and that she should therefore take under the lapse statute. (Ill. Rev. Stat. 1953, chap. 3, par. 199.) As to this contention we express no opinion. The decree of the trial court held otherwise, and in the absence of a cross appeal the matter is not open to consideration. *Daniels* v. *Cavner*, 404 Ill. 372, 380; *Bryant* v. *Lakeside Galleries, Inc.* 402 Ill. 466.

The decree of the circuit court of Cumberland County is affirmed.

*Decree affirmed.*