STATE BANK AND TRUST COMPANY, TRUSTEE, *vs.*
ADELAIDE GROU NOLAN ET ALS.

First Judicial District, Hartford, May Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

In this State, joint tenancies are not favored in the law, and can only be created by express provision; and even when so created, they do not carry by implication the incident of survivorship which, likewise, can only arise by virtue of a specific direction.

It is a generally recognized rule that when a testator leaves property to a class, with a provision that the share or portion of one dying without issue shall go to the survivor or survivors, the provision exhausts itself after it has once operated to pass such shares or portions, and it cannot be extended to those which

State Bank & Trust Co. *v.* Nolan.

have already accrued under the provision so as to pass them a second time.

This rule is subject to three exceptions: first, where the testator has expressed a contrary intent; second, where it is clear that he regarded the subject of the gift as existing at the time of distribution in the form of an aggregate and previously undivided fund; and third, where there is a gift over of the whole fund.

In the present case, the testator bequeathed to his trustees the sum of $100,000, with directions to pay over one fourth of the income to each of his four children during his or her life; and further provided, in the fifth article, that "if any of my children should die leaving issue living at their decease his share or her share shall then be transferred to said children free from said trust, but if any should die leaving no children the same shall be held in trust for the use and benefit of the survivors, and if all die without issue then the estate is to go to my legal heirs." After the testator's death two of his children died leaving issue, to whom was transferred, free from trust, their respective shares of the principal. In 1921, a third child, George, died without issue, and thereafter his share of the income was paid, under the fifth article, to the surviving child, Mary, who died in 1924, leaving issue. The present suit was brought to determine whether the issue of Mary was entitled to the entire remaining principal of the trust fund, or only to the share which had been originally set aside for her benefit. *Held* that the provision in question must be construed only to pass the income of George's share to Mary during her life, and that it could not have the further effect of passing to the issue of Mary the principal of such share, which must be distributed under the residuary clause of the will.

The testator's direction to cut off from the trust fund the share of any child who might die leaving issue, tended to negative the creation of a joint tenancy or technical survivorship.

The use of such terms as "survivor" or "survivors" has no necessary bearing upon the nature of the estate created; they are frequently employed, as in the present case, merely to designate the takers of the estate.

The doctrine of "stirpital survivorship," so-called, can have no application to a will which makes no express provision for a remainder in fee to the survivors as such.

The term "issue" will be construed to mean "children" when the testator uses both words interchangeably in the same connection.

The issue of Mary claimed that the word "all" as used in the phrase, "if all die without issue, then the estate is to go to my legal heirs," should be construed as "any," and that, so construed,

the principal of George's share would descend to the legal heirs of the testator. *Held* that this claim was without merit, since it was apparent that the testator intended to use the word in its ordinary sense, and since the construction contended for, in connection with the preceding clause, would result in a double disposition of the share of each child dying without issue.

The claim was advanced that by the residuary clause, bequeathing the remainder of the estate in equal shares to the four children, each of them, including George, acquired an interest in the nature of a base fee in the trust fund created by the fourth article, determinable upon his or her death leaving issue; and that since George's estate was never determined by the happening of such contingency, it was distributable to his heirs as intestate estate. *Held* that this claim, with its necessary corollary that George's estate was transmissible by will, was clearly contrary to the testator's intent to secure a life use to his children and the remainder interest to his grandchildren *per stirpes*.

Where a will contains other definite and important bequests, a residuary clause cannot, as a general rule, be taken as the primary and principal factor determinative of testamentary intent.

It is no objection to the vesting of a gift in remainder to a class, that no member of it is in existence at the testator's death, for as soon thereafter as one is born, the vesting occurs.

The question of the vesting of estates in remainder is always determined by the present capacity of one to take upon the occurrence of the event upon which the remainder is limited and not upon the certainty that he will be in existence when it occurs.

It is not the uncertainty of enjoyment in the future, but the uncertainty of the right of enjoyment, which marks the difference between a vested and contingent interest.

The word "then" in the phrase, "if all die without issue, then the estate is to go to my legal heirs," referred to the time of distribution and not to the time of vesting.

Argued May 7th—decided September 19th, 1925.

SUIT to determine the construction of the will of John Grou, late of Hartford, deceased, brought to the Superior Court in Hartford County and reserved by the court (*Dickenson, J.*) upon an agreed statement of facts, for the advice of this court.

John Grou, late of Hartford, died May 10th, 1866, having December 8th, 1865, executed a will dated on

that day, which on May 15th, 1866, was admitted to probate by the Court of Probate for the district of Hartford. This will, after bequeathing three pecuniary legacies, proceeds as follows:

"5. I give, devise and bequeath to George Brinley, Oliver G. Terry and Wm. J. Hamersly and their successors in office the sum of one hundred thousand dollars to have and hold the same upon the trust and confidence following: That is to say, they shall invest and hold the same for the use and benefit of my four children, John Grou, Jr., George Grou, Mary G. Vail and William D. Grou during their natural lives and shall pay to them equally the rents, dividends, increase and income thereof annually after deducting the expenses of said trust, one fourth to each during his or her life.

"If any of my children should die leaving issue living at their decease his share or her share shall then be transferred to said children free from said trust, but if any should die leaving no children the same shall be held in trust for the use and benefit of the survivors and if all die without issue then the estate is to go to my legal heirs. It is my intention that the trust should continue as herein provided so long as any of my children live and if any vacancy occur in the number of the trustees the Court of Probate for the district of Hartford shall fill the vacancy and keep the number of trustees full. I desire that the property remain as invested by me so long as the same can be made profitable for my estate, but I give them power to change and reinvest the same when they find it to be for the benefit of my estate, but no change to the amount of Ten thousand dollars shall be made without the consent of all my said trustees, and giving them power to deed or sell my real estate if the same should be held by them as trustees. The income may be paid to my

children semi-annually or quarterly if my trustees choose so to pay it—The five thousand dollars advanced to Mary G. Vail shall be considered an advancement and shall be taken as so much of her share of my estate and as a part of the one hundred thousand dollars, thus giving her the use of twenty thousand dollars instead of twenty five thousand dollars.

"5. [*Sic*] I give, devise and bequeath all the rest and remainder of my estate real and personal to my four children, their heirs and assigns forever to be equally divided between them.

"6. I constitute and appoint George Brinley, Oliver G. Terry and William J. Hamersly Executors of this my last will and testament and give them power and authority to sell and convey my real estate if deemed by all of them for the better settlement of my estate."

George Brinley, Oliver G. Terry and William J. Hamersley, named as executors of the will, qualified, and paid all lawful claims against the estate and all legacies required to be paid before the settlement of their administration account, which account was accepted and approved by the Court of Probate. William J. Hamersley and Oliver G. Terry, who were named in the will as trustees of the trust created by article five thereof, declined to act as trustees, and on May 1st, 1869, George Brinley qualified as a trustee, and Daniel Goodwin and William F. Tuttle were appointed by the Court of Probate as trustees.

On May 15th, 1869, the estate of John Grou was distributed, and stocks, notes and cash to the amount of $95,000 was set off to George Brinley, Daniel Goodwin and William F. Tuttle as such trustees, and an advancement of $5,000, made by the testator to Mary G. Vail, was taken as so much of her share and as a part of the $100,000 in the trust, as provided in article five of the will. George Brinley, Daniel Goodwin and

William F. Tuttle have all died, and on or about November 3d, 1913, plaintiff was duly appointed a trustee of the trust and trust fund aforesaid, has qualified and is now acting as trustee.

The testator had four children, John Grou, Jr., born in 1830; George Grou, born in 1832; Mary G. Vail, born in 1835; and William D. Grou, born in 1839. These four children survived him, and were the four children named in his will, and the testator had no other children or other descendants who survived him. At the time of the death of John Grou only one of his children was married, Mary G. Vail, and at the time of his death no grandchildren of the testator had been born. On January 19th, 1925, Austin D. Barney was appointed by the Court of Probate administrator d.b.n., c.t.a., of the estate of John Grou, has qualified and is now acting. John Grou, Jr., died in 1879, intestate, leaving surviving him Adelaide Grou Nolan, who was the only child ever born to him, and 25/95 of the then remaining trust fund was then transferred to Adelaide Grou Nolan, and the same was then received by the Security Company as her guardian, in full of the share of the trust fund to which Adelaide Grou Nolan became then entitled by reason of the death of John Grou, Jr. On December 17th, 1924, Adelaide Grou Nolan was appointed administratrix d.b.n. of the estate of John Grou, Jr., qualified and is now acting. William D. Grou died in 1899, intestate, leaving surviving him five children, Katherine Gilman Grou, Mabel Smith Grou, Hortense Grou, William Gilman Grou and George Gilman Grou, who were the only children ever born to him; and 25/70 of the then remaining trust fund was transferred to them in full of the share to which they became then entitled, by reason of the death of William D. Grou. On January 19th, 1925, Katherine Gilman Grou was appointed ad-

ministratrix of the estate of William D. Grou, qualified and is now acting.

George Grou died intestate in 1921, and no child had ever been born to him, and he had never married, and 25/45 of the trust fund as it existed at the date of the death of George Grou, with its subsequent accumulations, has never been transferred from the trust estate. The income from this portion of the trust fund has been paid to Mary Grou Vail from the death of George Grou until her death. On August 16th, 1921, Thomas G. Vail was appointed administrator of the estate of George Grou, qualified and is now acting. Mary G. Vail died intestate in 1924, leaving one child, Thomas G. Vail, who is the only child Mary G. Vail ever had, and an agreement between all parties concerned has been made and entered into authorizing the payment to Thomas G. Vail of 20/45 of the trust fund now in the hands of the trustee, as Mary G. Vail during her lifetime had received the advancement of $5,000 referred to in the will, the above payment of 20/45 of the present fund being the share of the same to which all parties agree Thomas G. Vail was entitled upon the death of Mary G. Vail. On December 27th, 1924, Thomas G. Vail was appointed administrator of the estate of Mary G. Vail, qualified and is now acting.

That portion of the trust estate from which George Grou received the income during his life and the income from which since his death was paid to Mary G. Vail as above set forth, is now held by the plaintiff as trustee aforesaid, is ready for distribution to the persons entitled thereto, and has at the present time a value in excess of $60,000.

The questions upon which the advice of this court is desired are as follows:

"1. Whether or not under said will that part of the trust fund in the plaintiff's hands on which George

Grou received the income during his life should be distributed in equal shares to the estates of the four children of the testator.

"2. Whether or not under said will said portion of the trust fund in the plaintiff's hands on which the said George Grou received the income during his life should be distributed either to the estate of Mary G. Vail, the survivor of the testator's four children, or to said Thomas G. Vail as the sole child and heir at law of said Mary G. Vail.

"3. Whether or not under said will said portion of the trust fund in the plaintiff's hands on which the said George Grou received the income during his life should be distributed to the grandchildren of the testator and if so in what proportions and whether *per stirpes* or *per capita*.

"4. To whom, if to anyone, did the testator under said will give the portion of the trust fund in the plaintiff's hands on which the said George Grou received the income during his life, said George Grou having died leaving no children him surviving and all the other children of the testator being now deceased.

"5. To whom shall the plaintiff distribute that portion of the trust fund in its hands on which the said George Grou received the income during his life, the same being now in the hands of the plaintiff ready for distribution."

*John H. Buck,* for the plaintiff.

*Francis W. Cole,* for defendant Adelaide Grou Nolan, individually and as administratrix.

*Josiah H. Peck* and *Frederick H. Waterhouse,* for defendant Thomas Grou Vail, individually and as administrator.

*Lawrence A. Howard,* with whom, on the brief, was *Arthur E. Howard, Jr.,* for defendants, children of William Grou.

KEELER, J.    The defendant Vail claims that the absolute interest in what remains of the trust fund created by the will under consideration is vested in him, and that the remainder of the trust fund created by the will should be paid over to him.   The two other groups in this triangular controversy insist upon a construction of the will which would result in the division of the fund among the grandchildren of the testator *per stirpes,* and arrive at this conclusion in several suggested lines of treatment of the subject. The argument of the defendant Vail in brief, is this: The will provides that in case any of testator's children shall die childless the share of the income theretofore paid to the deceased child shall be added in equal proportion to the shares of income of the surviving children; that upon the death of any child leaving issue the share of which such child has had the income during life shall be transferred free of the trust to the issue of such child; that after the death of George W. Grou by virtue of the provision last noted Mary G. Vail enjoyed the income theretofore paid George W. Grou, making, together with what she took in her own original right, one half of the income derived from the original entire trust fund; that since that was the share of income which she received, her son and only child, Thomas G. Vail, is to receive in absolute ownership the whole of the remainder of the corpus of the fund, or stated generally, the share of Mary G. Vail in the income, including that which she had received as surviving child after the death of George W. Grou, became by accretion her own individual share, and that her son Thomas at her death was therefore en-

titled to the absolute ownership of the corresponding principal fund of the trust.

While not explicitly stated, there underlies this argument an application of the doctrine of common-law survivorship, an assumption that the four children of testator held the life use of the entire trust fund created in the will as joint tenants and not as tenants in common, subject to having the principal fund diminished by the payments to children of the life tenants. It needs only to be mentioned that in this State joint tenancies are not favored in the law, and that even when a joint tenancy is created it does not, as at common law, carry with it the incident of survivorship. If the latter factor is to be joined to the estate created, it must be done by a definite provision in that regard. *Allen* v. *Almy*, 87 Conn. 517, 525, 89 Atl. 205; *Mahoney* v. *Mahoney*, 98 Conn. 525, 531, 120 Atl. 342. There is nothing in the direction of the will as to payment by the trustees to the children to indicate an interest of joint tenancy or of survivorship as attendant thereon; the direction to hold the property is not to hold in trust for the children and the survivors of them, but "to hold the same for the use and benefit of my four children," naming them, and the direction to pay the income is not to pay to the children and their survivors, but it is to pay the income to them equally "one fourth to each during his or her life." The direction to cut off from the principal of the trust fund the share of any of the children of testator who die leaving children, also tends to negative any conception of joint tenancy or technical survivorship. *Houghton* v. *Brantingham*, 86 Conn. 630, 639, 86 Atl. 664. We therefore proceed upon the conclusion that the use of the word survivor by this testator is purely designative, that is, to indicate a person who has lived after the death of another, a person who at a given

time is still in life. It is in line with what we said in *White* v. *Smith,* 87 Conn. 663, 676, 89 Atl. 272, that "the survival which the will provides for, however, is not one which concerns the nature of the estates taken, but one for the determination of the ownership of the class of takers." The contention of this defendant that the accrued share of Mary G. Vail in the income of the estate, forms the basis of the payment to her son of the whole of the principal sum from which this income had been derived, must be maintained upon some other basis than that of survivorship arising from a joint tenancy.

This the defendant Vail attempts by invoking certain exceptions to the general rule that when property is left to a class, with a provision that if one die without issue his share shall go to the survivor, this provision does not apply to shares which have once accrued so as to pass them a second time; that is, that the word "shares" covers the original and not the accruing shares.

The above rule and the exceptions relied upon by this defendant is stated in Theobald on Wills (7th Ed.) 665, 666, cited on his brief, as follows: "Clauses in a will disposing of the shares of devisees or legatees dying before a given period or event do not, in the absence of a distinct evidence of intention, extend to shares which have once accrued under those clauses so as to pass them a second time. . . . Accrued shares will not pass under the word 'share' or 'portion,'" except that "[1] accrued shares will go with original shares if there is an intention expressed that they should do so. . . . [2] Accrued shares will pass, where the testator, though he speaks of individual shares, yet shows that he looks on the fund as existing at the time of distribution as an aggregate and previously undivided fund by speaking of it, for instance, as the trust

fund. . . . So, where the whole fund is given to a class, with benefit of survivorship, the words of survivorship apply to the whole, accrued as well as original shares. . . . [3] And a gift over of the whole is convincing evidence of the same intention. In such a case 'share' must have been meant to include every interest accruing as well as original, for otherwise the estate would go away from the issue piecemeal."

The first exception to the general rule is concerned with any express intention occurring in any given will and involves a detailed consideration of the will involved in the instant case. We pass over this for the moment and consider the second and third exceptions with reference to the Grou will. The lack of application of the second exception to this will is clear from the fact that the testator did not have in mind any aggregate fund existing at the time of distribution composed of the whole trust estate, except in the one contingency of all of his four children dying without issue; in case any one of them dies leaving issue, the aggregate fund disappears from his testamentary scheme. The exception stated by the text-writer has validity only where the whole of the corpus of the trust fund remains in the hands of the trustees until the death of the last life tenant, and is then divided, and not, as in the case before us, allotted to each of those having remainder interests vesting absolutely at the death of the parent and paid over at that time, thus reducing by one quarter the amount of the principal fund. This appears from the supporting cases referred to by Theobald, some of which are cited upon the brief of this defendant. Of these, in *Clift* v. *Birkhead,* 4 Exch. 110, the principal fund is kept intact until the death of the last child, and there is this express provision for survivorship in relation to it: "And in case all such children but one should happen to die

without issue, or if there should be but one such child, then to the use of such surviving or only child, and of the heirs of his or her body lawfully issuing, and for [in] default of such issue", then over. That is, there here appears the controlling feature, lacking in the instant case, of a disposition of the share of the principal fund of a child who might die without issue. There is no need to imply survivorship; it is expressly provided for. In this case the aggregate fund is kept intact.

In *Douglas* v. *Andrews,* 14 Beav. 347, there is the same provision for keeping the principal fund intact and aggregate and the decision is placed upon that ground, and there is also the same provision for the death of all the children except one, contained in *Clift* v. *Birkhead, supra.* In the original bequest, however, the language is much broader, as it is of the "part, share and interest." The same may be said of *Dutton* v. *Crowdy,* 33 Beav. 272, where the provisions are so identical with those in *Douglas* v. *Andrews, supra,* as to suggest the use of a standard form. In the much earlier case of *Worlidge* v. *Churchill,* 3 Brown's Ch. Rep. 465, also reported as *Anon.,* Dyer, 303 b, so far as can be gathered from the rather meager report, the decision apparently is placed upon the intent of the devisor, as expressed, to keep the land aggregate and undivided "by the words above if they are well weighed."

It will be apparent from the consideration of the cases above cited and considered, that in each case the ground of decision was based upon the treatment of the fund during the life tenancy as a whole, and of a bequest over as further convincing evidence of such an intent. The reasoning of the cases cannot apply to the instant case, in which the principal fund, so far from being treated as an aggregate, is expressly treated as a diminishing fund, and provision made for its

successive diminution as each child dies leaving issue. Where survivorship as regards the principal of the fund has been claimed to follow from such an interest, the English courts, with all of the cases above cited before them, have refused to make such an implication. In a comparatively recent case, *Parker* v. *Mears,* L. R. (1914) 1 Ch. Div. 694, it appeared that the testator left personal estate to trustees to pay to three daughters equally for life, and after the decease of any one of them to pay a third part of the capital to her children, and if any daughter died without issue the survivors or survivor were to take the share of the deceased for life, and in case all of the daughters died without issue, then the capital was bequeathed to the next of kin. Two daughters died, one leaving children. The third died afterward without issue, and it was held that there was an intestacy as to two thirds of the capital fund. It will be observed that that case is on all fours with the instant case. We give a somewhat extended quotation from the opinion, not only because of its clear exposition of the point involved, but because it also passes upon the doctrine of "stirpital survivorship," which is invoked by counsel for the defendant Nolan, and is hereafter considered: " 'Why is any implication necessary? The will gives rise to no doubt or ambiguity, then why should the court take upon itself to supply and read in limitations which the testator has left out, and left out at the very moment when his attention must have been directed to a state of things calling for the very limitation which it is now sought to read into his will but which he has omitted?' I think there is great force in that argument. The testator deals first with what is to happen to a share in the case of a daughter who dies leaving issue, then he goes to the alternative case of a daughter who dies without leaving issue. This is not a case where he has not contemplated that event at all; he has not only

contemplated it, but he has dealt up to a certain point with the share of a daughter so dying by providing that the income of that share is to be received and taken by the survivors or survivor of his daughters for life. But then he stops short, and abstains from dealing with the capital of the share. In that state of things am I justified in inserting after the gift of the income to the survivors or survivor of the three daughters a gift of the capital to their issue in equal shares? I do not think I am. Were I to do so it would involve . . . my also construing the words 'survivors or survivor' as equivalent to 'others or other.' But why should I so alter this will as to impose on those words an unnatural construction when if I read the will as it stands they bear their proper and natural construction? I do not think I am entitled first to fill up the gap by inserting the gift in remainder and then to construe the words 'survivors or survivor' as meaning 'others or other.' I must first construe the will as it stands, and no case has been cited which supports the contention of the applicant that the gift of a life interest to the survivors or survivor without any gift in remainder to their children or issue creates a situation in which the court ought to imply such a gift or impose on the words 'survivors or survivor' any meaning other than their strict and proper meaning. Accordingly I must hold, in the events which have happened, that the capital of the two third shares of the daughters who died without issue is undisposed of and passes to the next of kin of the testator to be ascertained at the time of his death." See also *Harrison* v. *Harrison*, L. R. (1901) 2 Ch. D. 136.

In *Lombard* v. *Witbeck*, 173 Ill. 396, 51 N. E. 61, cited by this defendant, there is, as in the English cases cited by him, an express disposition of the principal of the shares of the life tenants by way of sur-

vivorship, as distinguished from their respective shares of income, and no implication of a bequest of principal to survivors arising by implication from their right of survivorship as regards income. In *Kleinhans* v. *Kleinhans*, 253 Ill. 620, 97 N. E. 1077, also cited in this connection, there is no right by survivorship involved; it presents an ordinary case of cross-remainders. *Tingier* v. *Woodruff*, 84 Conn. 684, 81 Atl. 967, cited by this defendant, is concerned with the proper distribution of income during the continuance of a trust, and has no relation to any right or interest in the remainder, since the latter, upon the termination of the trust, is given over to testator's "legal heirs according to the law for the distribution of estate in this State." The use of the word "share" in connection with the devolution of the income dependent upon successive deaths was merely a convenient way of expressing the extent of the pecuniary interest of a survivor, and arose from the express provisions of the will, and not from any implied survivorship.

Recurring to the first exception to the general rule, in the construction of the word "survivors" as given above in the quotation from Theobald, we will now consider the text of the will itself as bearing upon the question of survivorship as respects the share of George W. Grou. At the outset we are struck with the fact that the testator repeatedly treats the "share" of each of his children as entities integrated, individualized and apart one from the other. Their only relation to the trust fund as a whole is in the provisions for administration. The share of Mary G. Vail, for instance, is expressly stated to be less than that of her three brothers by the sum of $5,000 hitherto advanced to her and as "thus giving her the use" of $20,000 instead of $25,000. Her share in the mind of the testator is "the use" of a certain sum. He speaks of a

share as "one fourth," and in no way suggests that in his mind "share" has any other meaning, or that it might be some other fractional part. The portion which is to be transferred to the children of a deceased life tenant is "his share or her share" and that share has been previously described in the sentence just preceding as "one fourth." Then again we have a clause providing (1) for the transfer of a child's share to his children free from the trust, followed by a provision (2) for holding his share, not the whole invested fund, but his share, in trust for the use and benefit of the surviving life tenants, and he follows it up by a gift over (3) in case of all of his children dying without issue. Assuming that the testator was logically working out a plan of testamentary disposition, we should infer that when he had stated what was to happen if a child died leaving children (1) he had by this clause disposed once and for all of the share of that child by removing the share and the takers of that share from further participation in the trust estate in any way; the trust as to that share was to cease, and that when he had stated in the next clause what was to happen (2) when a child had died childless, he was dealing with a state of facts in no way connected with the situation made in clause one, and having no ultimate relation to it. The third clause following the second would seem in the mind of the testator to have disposed of all contingencies, although as we now see he was mistaken. He had not disposed of the share of the principal fund of one of his children dying without issue, although he had provided for the disposition of the income of such a share. To adopt the claim of the defendant Vail would be to run counter to the idea of equality which is an outstanding feature in the will. Also, the most careful consideration of the will fails to indicate that the testator had any desire, expectation

or thought that owing to the accident of the order of the deaths of his children, a situation would be created whereby the child of one of his children would take twice what the child or children of his other two children would respectively take. We therefore conclude that the provisions relating to the interest of survivors are concerned only with income, and that there are no reasonable implications by which they can be extended to relate to the disposition of the principal fund.

Counsel for the defendant Nolan, as an alternative claim, suggest the application of the doctrine of stirpital survivorship, which to some extent has been applied in England, whereby to avoid intestacy, the word "survivors" is read as equivalent to "others," or where the construction is not carried to the extent of actual substitution of the word by construction, but the word "survivors" is held not only to include children actually surviving but those who figuratively survive in the persons of their descendants and thus take an interest under the primary gift. Reduced to a principle the doctrine is thus formulated: "If a devise or bequest be to several for life, with remainder to their issue, and if any die without issue, to the survivors for life, with remainder to their issue, with an ultimate gift over if all of the tenants for life die without issue, then if a tenant for life dies leaving issue and another afterwards dies without issue and there are issue of the first living at the death of the second, such issue will take." Spitz on Conditional and Future Interests, 87. The same doctrine is stated and considered in Theobald on Wills (7th Ed.) pp. 686 and following; also in 2 Jarman on Wills (6th Ed.) 1508. The provision in the Grou will for complete severance from the principal fund of the share of each child who dies leaving children, decidedly militates

against the adoption of this claim. Also, if the principle is to be applied in any given case, there must be a remainder to the survivors as such in fee, and in the instant case such a result can only be obtained by creating by implication an absolute interest in remainder from the gift of the income to survivors. This, as we have just said, we are not in the instant case allowed to do. We refer back to the extract from the opinion in the case of *Parker* v. *Mears,* L. R. (1914) 1 Ch. Div. 694, not only as authority but for the very cogent remarks therein contained, applied in a case practically identical with the present case. So far as the final distribution of the Grou estate is concerned, had we agreed with the contention just considered, the same result would be reached as that at which we have arrived, but the income of the trust fund properly would have been divided into three parts and so paid over, and not all paid to Mary G. Vail during her life.

Incidental and subordinate questions arising in the case have been discussed, and may here briefly be noticed. The use of the word "issue" of children of the testator, referring to persons taking in remainder and "children" is evidently equivalent and synonymous. In one phrase the word "issue" is used and in the next phrase of the same sentence the words "said children" occur. In this same sentence persons manifestly the same are twice designated as issue, and twice as children. The question of the application of the statute of perpetuities existing in 1866 has been raised with reference to the gift over to legal heirs in case all of testator's children died without issue. It presents little difficulty, but in no way is involved in the conclusion at which we have arrived. It was suggested in argument that the word "all" in the gift over just referred to may be construed as "any," and thus carry the share of George W. Grou to testator's legal

heirs. We cannot conclude any such intent on the part of the testator. In the same sentence he has used the word "any" twice in its ordinary sense applying to his children individually, and it is evident that the word "all" immediately following is used by way of contrast. Furthermore, this construction would result in a double disposition of the share of each child, since if "all" were to be construed as "any", by the earlier provision it would be held for the use and benefit of testator's surviving children, whereas by the later provision the principal of the share would vest at once in his legal heirs. As is observed by counsel for Katherine Gilman Grou *et als.*, "the testator's intent also is plain in the use of this last clause to depart from the consideration of moieties of the estate and to consider the estate as a whole. He could not so intend if he used the word 'any.' If 'any' is meant, then 'the estate' is not involved, but only a share of it. If 'all' is meant, then 'the estate' is involved." If, however, this mode of construction were adopted the same result by way of distribution would ensue, as that which we have been led to adopt. Counsel for defendant Nolan urge the view that by the general residuary clause bequeathing the residue of testator's estate equally to his four children, he created in George W. Grou an absolute estate in one quarter of his entire estate, including the estate left in trust, subject to be determined, however, if the latter died leaving children, that is, speaking in terms of the law of real property, he created a base fee. He had a determinable estate; it was never determined; he died owning it, and now after the determination of the trust it is part of his intestate estate, and to be distributed as such. This disposition of the matter does not commend itself to our judgment. If, as is claimed, this share is inheritable as intestate estate, it was also transmissible

by will, and we have a case where the shares of George W. Grou's brothers and his sister pass to their respective children while his share goes where he chooses to leave it.. Plainly that was not the testator's intent, which is very manifestly to secure a life use in his children of the property left in trust, and the remainder interest to his grandchildren *per stirpes.* In most cases a residuary clause, where there are other definite and important bequests, cannot be taken as the primary and principal factor determinative of testamentary intent; it is a catch-all, a refuse group, a provision which operates after the operation of the other provisions of a given will; its logical position is the same as its local position, at the end of the testamentary process, not at the beginning. It may be remarked, as we have stated with regard to other claims, that the adoption of the one just considered would not change the ultimate distribution consequent upon the disposition which we have made of the case.

Passing now to what we regard as the correct interpretation of the will in question, it may be stated quite briefly, as many points bearing upon it have been disposed of in the foregoing discussion. The testator and his legal adviser evidently thought that the possibilities of the testamentary situation had been covered, yet we find that the instrument lacks a specific provision for the case of a child dying without issue, as regards the ultimate remainder interest in his share. The will gives no indication by reasonable implication of what testator intended in such a situation. It does not appear that testator had attempted in any way to provide for this contingency, and thought he had done so, yet had done so in an ambiguous or unintelligible way. It is a case of clean forgetting. Our task is to construe the will as it stands, to declare the legal effect

of all that testator meant by what he said, and to interpret its legal consequences.

The estate given each child in the will is a one fourth share of a fund of $100,000 (leaving out of consideration the advancement to his daughter Mary), from which for his or her life he is to receive the net income from the trustees named in the will or their successors. In case any child dies leaving children, his share in the capital fund goes at his death to his children, if he leave any, and is cut off, segregated from the original amount of the combined original shares, and transferred to the children in absolute ownership. The bequest to the children of each child is to a class, beginning when in each branch of the family a grandchild is born, and enlarging by successive births, if any, to the parent representing any particular branch or stem. Each set of grandchildren forming the class took in common under the will a vested interest by way of contingent remainder in the entire share of the parent, and where there was only one, he or she took such interest in the entire share of the parent; the contingency is the existence of the child at the death of the parent. The claim of counsel representing Mrs. Nolan, that there can be no vesting in a class, unless at least one member of the class is in existence at the time of the testator's death, is not valid. This clearly appears when we consider the everyday occurrence of a bequest to a child for life with a remainder in fee to his children. It is quite often the case that there are no children living at the death of the testator, yet as soon as a child is born, that child has a vested remainder indefeasible, assignable, inheritable and transmissible; if the gift has annexed to it the requirement that the child shall survive the parent, then the child takes the same sort of interest except it is defeasible upon the contingency named, of not surviving the par-

ent. It is. elementary that the present capacity of any one to take the gift in remainder upon the occurrence of the event upon which it is limited, and not the certainty that the person will be in existence when that occurs, determines the question of vesting, or, as it is usually briefly expressed where the contingency is one of event and not of person, "it is not the uncertainty of enjoyment in the future, but the uncertainty of the right of enjoyment, which marks the difference between a vested and contingent interest." 4 Kent, Com., star page 406. In *Gorham* v. *Gorham,* 99 Conn. 187, 194, 121 Atl. 349, we held that children of a named legatee taking in fee upon the death of a parent who had a life estate in trust, had as a class a vested remainder interest, whether born before or after the death of the testator. If such a gift vests it must vest in a class as soon as the class begins to form by the birth of the first child included therein. The class then has the same incidents as though it contained a member or members who were living at the death of a testator, and if so vested, the share of each person in the class remains vested unless divested by his not surviving the life tenant. *White* v. *Smith,* 87 Conn. 663, 89 Atl. 272. The word "then," in the will before us, clearly relates to the time of payment, and not that of vesting. It then vested in possession what had before vested in right. If we follow in chronological order the operation of the Grou will upon the trusts established therein, we find, at the death of the testator, only one of whose children was then married, the legal estate of the four trust shares vested in the trustees, with equitable life estates in each of the four children, and until some child should die leaving issue, the ultimate remainder interest in the legal heirs of the testator by virtue of the provision over in case all of his children died without issue. (This is assuming the

latter provision valid; whether or not it is so, it is equally valuable as bearing upon the construction of the will and the testator's intent). When the first child died leaving a surviving child or children, this provision over ceased to have force, and the ultimate remainder interest in the three shares left passed to the residuum of the estate. The same process continued upon the successive deaths of the testator's children, and when Mrs. Vail died, there remained in the trust fund the share of George W. Grou with the remainder interest in the principal fund in the residuum of John Grou's estate. This is only another way of saying that the testator left to his son, George W. Grou, the use of one quarter of $100,000 for life, with remainder of the principal fund to his children, if any he left at his death, and as this bequest to the children lapsed for want of a legatee and being personal estate, it passes by the residuary clause of the will.

The answer to the first, second and third questions propounded for advice is, no. To the fourth question, the answer is, to testator's residuary legatees. To the fifth question, the answer is, that the trustee should pay over the sum remaining in its hand to Austin D. Barney, administrator, etc., upon the estate of John Grou.

No costs will be taxed in favor of any of the parties in this court.

In this opinion the other judges concurred.