Fay Polk, et al., Plaintiffs-Appellants, v. Harry L. Swartz, et al., and Unknown Owners, Defendants-Appellees, and Clarence T. Jackson, et al., Defendants-Appellants.

Ross C. Swartz, et al., Counter-Plaintiffs-Appellees, v. Fay Polk, et al., Counter-Defendants-Appellants, and Harry Leo Swartz, a/k/a Harry L. Swartz, and Francis E. Swartz, et al., Unknown Owners and Unknown Parties Having an Interest in the Real Estate Known and Described as Follows: The Northeast Quarter of Section 34, Township 20 North, Range 5 East of the Third Principal Meridian in Piatt County, Illinois; and Harlow Stensel, As Executor of the Estate of Hattie E. McConnel, Deceased, Counter-Defendants-Appellees.

Gen. No. 10,790.

Fourth District.

January 12, 1967.

John D. Carson, of Urbana, and Philip C. Zimmerly and Lloyd S. Engert, of Champaign, for appellants.

Robert P. Shonkwiler and Arnold Sievers, of Monticello, for appellees.

SMITH, J.

The trial court construed the will of Jacob H. Swartz as vesting a remainder interest in fee in brothers and sisters or their successors and decreed partition accordingly. Appellants' contention is that a defeasible interest was devised by the will and deeds made by two remaindermen were void, thus making the decretal distribution erroneous.

After providing for payment of debts and funeral expenses, the will read as follows:

> ". . . Second: I give and bequeath to my wife Hattie E. Swartz all of my personal and real property said real property being the North East Quarter of Section Thirty-Four Township Twenty Range Five East, to have and to hold said personal and real property for her exclusive use and benefit during her natural life including all rents and profits to be derived from said estate.
>
> "Third: I give and bequeath to my brothers and sisters, [naming them] the remainder of said real estate and so much of said personal estate as shall remain at the death of my wife Hattie E. Swartz, said remainder of my estate to be divided between them share and share alike, the child or children of them or either of them to inherit the share of its or their parent if deceased or in case of death of either

of my said brothers or sisters without issue, then in that event, the survivors of them to share equally the portion such brother or sister would have if living.

"Fourth: I do hereby name and appoint my said wife Hattie E. Swartz—to be the sole executor of this last will and testament to serve as such without bond.

"I further say that the words 'if deceased' mentioned above were so written before the signing thereof . . ."

The chronology of events is as follows: The testator made his will on October 30, 1899, died August 3, 1913, and his will was admitted to probate September 11, 1913. Testator had no children. At the time of the execution of the will he had four living brothers and two living sisters as well as his wife. At the time of his death, one sister had died, without leaving children, either natural or adopted. The others all survived him and all had children. His widow lived until July 24, 1964. In this 50-year interim all brothers and sisters died leaving children. In 1917 one brother conveyed his interest. In 1940 a daughter of another brother conveyed her interest. It is these deeds that provide the focal point of this appeal. The trial court held that the fee simple interest vested in the four brothers and one sister who survived the testator subject to the widow's life estate and that such interests "could be passed by deed, devise or by the Statute of Descent."

Too well recognized to require authority are the propositions (a) that courts prefer an interpretation which vests remainders unless a contrary intention is adequately expressed, and (b) such intention must be found within the four corners of the will, if possible, and (c) if ambiguity or doubt exists rules of construction furnish the guidelines for ascertaining intent. The basic

controversy here is whether the testator intended a vesting at the time of his death or a vesting at the time of the life tenant's death. The creation of the life estate in the second paragraph has a more emphatic and mandatory ring than that normally used in creating a life estate. The language has a more dynamic ring than the words "for life," "for and during her natural life" or "for so long as she shall live." It leaves no room for doubt. It is for her "exclusive use and benefit . . . including all rents and profits to be derived from said estate." It suggests that the testator unequivocally intended and declared that he would brook no interference with her use and enjoyment of her estate on the part of anyone. Such appears to be his clear intention. We can only assume that such language was carefully chosen.

In the first sentence of paragraph three, the testator clearly lumps the real and personal estate together in this language: ". . . the remainder of said real estate and so much of said personal estate as shall remain at the death of my wife . . . said remainder of my estate to be divided between them share and share alike." It is thus clearly stated that the quantum of the property to be received by each brother and sister or their substitutes cannot be ascertained until the death of the wife. This seems a clear expression of intention that the quantum and the recipients should be ascertained and determined as of the wife's death within the principles stated in Smith v. Shepard, 370 Ill 491, 19 NE2d 368. It is clear that the recipients and the quantum of the estate can only be determined and "divided between them share and share alike" at the time of her death. We conclude, therefore, that the brothers and sisters surviving the testator took vested remainders subject to divestiture upon death either with or without issue before the termination of the wife's estate. The substitutionary gifts enter the picture whether the death of

a brother or sister is with or without children as the case may be.

Appellees rely heavily upon Murphy v. Westhoff, 386 Ill 136, 53 NE2d 931, and Peadro v. Peadro, 400 Ill 482, 81 NE2d 192. The Supreme Court has commented on the two cases and their effect. In Phelps v. Seeley, 3 Ill2d 210, 215, 119 NE2d 923, 926, the court said:

> ". . . The defendants rely upon Murphy v. Westhoff, 386 Ill 136, 53 NE2d 931, and Peadro v. Peadro, 400 Ill 482, 81 NE2d 192, as sustaining their position that the words of survivorship were used by the testator to refer to his own death rather than to the death of the life tenant. The recent case of Harris Trust & Savings Bank v. Jackson, 412 Ill 261, 106 NE2d 188, 192, specifically limited the two cases relied upon to their particular factual situations and reaffirmed the familiar rule stated in Burlet v. Burlet, 246 Ill 563, 92 NE 965, and Smith v. Shepard, 370 Ill 491, 19 NE2d 368, that when a gift over is preceded by a particular estate, it will normally take effect if the contingency happens at any time before the termination of the particular estate. We added, 'Therefore, unless a contrary intent appears from the language of the will, in cases where the gifts are substitutionary, "death" is referable to that point of time when the first gift takes effect in possession, and the first taker must survive to that time.' 412 Ill 261, 269, 106 NE2d 188. Here, the 'first takers' are the three named sons and each must survive the death or remarriage of his mother, the life tenant, in order to take. The effect of our decision in the Jackson case has been correctly analyzed as follows: 'From this language and from the Storkan case [Storkan v. Ziska, 406 Ill 259, 94 NE2d 185.] it may be concluded that the Murphy and Peadro cases need no longer be regarded as jeopardizing the

integrity of the long established rule that upon a gift to one for life, followed by a gift in remainder, which is followed in turn by a gift over upon the "death" of one or more remaindermen, the word "death" is referable to a death at any time prior to the ending of the supporting estate.' Carey and Schuyler, Illinois Law of Future Interests, Cumulative Pocket Part, (1954) p 132. . . ."

Commenting on the Phelps case in 50 Northwestern Law Review 505, the author criticizes Westhoff and Peadro and states that Jackson and Phelps readopted the rule of construction which has long prevailed before they were pronounced. We would point out that in Westhoff the court relied heavily on the words "in fee" to indicate an intention for immediate vesting in the remaindermen. In Peadro the words "to be their sole and absolute property" were relied on to provide a like intention for immediate vesting. There are no comparable words in the Swartz will. There is nothing to remove Swartz from the operation of the general rule. The Supreme Court has restricted Westhoff and Peadro to their own particular facts. We must do likewise. We conclude, therefore, that the established rule is that upon a gift to one for life, followed by a gift in remainder, which is followed in turn by a gift over upon the death of one or more remaindermen, the word "death" or "if deceased" is referable to death at any time prior to the termination of the preceding or supporting estate. This appears to be the overwhelming authority in the United States. 65 Columbia L Rev 467. It follows that the brothers and sisters had a vested remainder subject to divesture upon death prior to the death of the life tenant. A brother or sister took under the will only if he or she survived the widow. None did. As each brother or sister died prior to the life tenant, his interest then vested in his children or their descendants per stirpes in equal shares.

Accordingly, the decree of the trial court is reversed and remanded for a determination of interest consonant with the views herein expressed and for decree accordingly.

Reversed and remanded with directions.

CRAVEN, P. J. and TRAPP, J., concur.